# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1917.

BERTIE A. HAYS, Appellant, v. R. S. HOGAN and J. E. HOGAN.

Division One, December 22, 1917.

1. NEW TRIAL: Reasons Not Entered of Record. The reasons assigned by the trial court for granting a new trial, if not entered of record as required by the statute, cannot be preserved for review in the appellate court by the bill of exceptions. But if contained in the bill they may be considered as throwing light upon the view the court took of the case during the progress of the trial.

2. NEGLIGENCE: Automobile: Liability of Father For Son's Negligence. Where no relationship of master and servant or principal and agent existed, a father, who purchased an automobile and maintained it as a family vehicle, with restricted uses, cannot be held liable in damages for personal injuries to a traveler on a public highway caused by the negligent driving of his adult son, a member of his family, who, having been cautioned not to use it without having first obtained permission, in violation of said injunction, used it upon an independent pleasure trip of his own, accompanied by his friends but by no other member of the father's family, although the permission had uniformly been granted to the son to use it whenever he requested it. It cannot be held that a son, in pursuit of his own pleasure, with an automobile owned by the father, was engaged in business for the father.

(1)

3. ———: ———: ———: **Presumption of Agency Arising From Permission.** The fact that the father owned the automobile and that it was with his consent being driven by his son at the time of the injury to another due to the son's negligent driving, raises no presumption that the son was acting within the scope of his authority or that he was acting as the father's agent and servant. Besides, such a rule would be to base one presumption upon another, namely, that the son was the agent of the father and that as such agent he was acting within the scope of his authority, whereas the law requires a presumption to be based upon a fact.

4. **AUTOMOBILE ACT OF 1911: Stopping for Horses: Highest Degree of Care: Constitutional.** Sections 8 and 9 of the Act of 1911, Laws 1911, page 322, requiring the operator of an automobile upon a public highway, to stop the same when signaled so to do by a driver of a vehicle drawn by horses, and to exercise the highest degree of care, are not unconstitutional.

5. **VERDICT: Indefinite: Bad Punctuation: Affidavits.** A verdict reading: "We, the jury, find the issues in favor of plaintiff and against both defendants and assess her damages at the sum of $6,500, Six Thousand $5.00 Dollars," supported by the affidavits of six of the jurors stating that the verdict agreed upon was for the sum of $6,500, such affidavits being always competent, is not so uncertain and indefinite that a valid judgment cannot be rendered thereon for $6,500. Inaccuracy of punctuation does not destroy a verdict which is responsive to the issues.

6. ———: **Excessive: $6,500.** A verdict of $6,500 for a widow, suing for damages for the negligent killing of her husband, who was fifty-seven years of age, with one leg off six inches below the knee and one arm somewhat smaller than the other, but who supported himself, wife and eight children, was not excessive.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson,* Judge.

REVERSED AND REMANDED (*with directions*) AS TO J. E. HOGAN.

*Wilfley, McIntyre & Nardin* and *O. L. Haydon* for appellant.

(1) A verdict of the jury, if intelligible and of clear meaning, will not be set aside on account of mere imperfections or irregularities. Ryors v. Prior, 31 Mo. App. 555; Gurley v. O'Dwyer, 61 Mo. App. 348; Mus-

ser v. Adler, 86 Mo. 450; Purver v. Koontz, 138 Ind. 252; Shaeffer v. Railway, 98 Mo. App. 445. (2) The verdict in the case at bar is, on the record, without ambiguity, and clearly shows that the verdict agreed to by the jury and returned into court was a verdict for six thousand five hundred dollars. State v. Underwood, 57 Mo. 52; State v. Rush, 95 Mo. 206; Devoy v. Transit Co., 192 Mo. 219; Hamburg-Breman Co. v. Mfg. Co., 76 Fed. 481; Capon v. Stoughton, 16 Gray, 364; West v. Bank, 63 Ga. 320; Hemkin & Palmers v. Barbrey, 40 Ga. 252; Mattocks v. United States, 146 U. S. 148; Davis v. Heber Mfg. Co., 119 Iowa, 56; Jackson v. Dickinson, 15 Johns (N. Y. ), 309; Peters v. Fogarty, 55 N. J. L. 386; Dalrymple v. Williams, 63 N. Y. 360; Wolfgren v. Schoepke, 123 Wis. 19. (3) Where one owns and maintains an automobile for the use and pleasure of himself and family, and an injury is inflicted through the negligence of the person in charge of the automobile while using the machine for one of the purposes for which it is kept, the owner is liable. And this is true whether the person driving the machine at the time is a member of the family or a hired chauffeur. Denison v. McNorton, 228 Fed. 401; Stowe v. Morris, 147 Ky. 386; McNeal v. McKain, 33 Okla. 449; Campbell v. Arnold, 219 Mass. 160; Burne v. Whitman, 209 Mass. 155; Smith v. Ford, 211 Mass. 269; Smith v. Jordan, 211 Mass. 296; Kayser v. Van Nest, 125 Minn. 277, 51 L. R. A. (N. S.) 970; Plotz v. Holt, 124 Minn. 169; Gignon v. Campbell, 80 Wash, 543; Switzer v. Sherwood, 80 Wash. 19; Birch v. Abercrombie, 74 Wash. 486, 50 L. R. A. (N. S.) 59; Allen v. Bland, 168 S. W. (Texas) 35; Hazzard v. Carstair, 244 Pa. St. 122; Moon v. Matthews, 227 Pa. St. 488; Cowell v. Saperston, 149 App. Div. 373, 208 N. Y. 619; McHarg v. Adt. 163 App. Div. (N. Y.) 782; Missell v. Hayes, 86 N. J. L. 348; Davis v. Littlefield, 97 S. C. 171; Winn v. Halliday, 69 So. (Miss.) 685; Carrier v. Donovan, 88 Conn. 37; Hiroux v. Baum, 137 Wis. 197; Lashbrook v. Patton, 1 Duy. (Ky.) 317; Winfrey v. Lazarus, 148 Mo. App. 388; Daily v. Maxwell, 152 Mo. App.

422; Marshall v. Taylor, 168 Mo. App. 240; Hays v. Hogan, 180 Mo. App. 237. (4) The ownership of the machine being conceded by the defendants, the presumption follows that when the defendant's son was using it he had his father's consent, and the burden was then cast on the defendant father to prove to the satisfaction of the jury that no consent, express or implied, had been given by him to the son. Shamp v. Lambert, 142 Mo. App. 567; Marshall v. Taylor, 168 Mo. App. 240; Christensen v. Christiansen, 155 S. W. (Tex.) 995; Birch v. Abererombie, 74 Wash. 486, 50 L. R. A. (N. S.) 59; Hazzard v. Carstairs, 244 Pa. St. 122; Moon v. Matthews, 227 Pa. St. 488; O'Malley v. Heman, 255 Mo. 391; Fleishman v. Ice & Fuel Co., 148 Mo. App. 117. (5) The master may be liable for the acts of his servant by mere acquiescence in or assent to former like acts of his servant, or to the act in question, and there need be no actual contract of employment nor payment for services to create the relation of master and servant. 26 Cyc. 1581. (6) The constitutional question attempted to be raised for the first time in the motion for new trial comes too late, and will be regarded by this court as having been waived. Hartzler v. Met. St. Ry. Co., 218 Mo., 526; Lohmeyer v. Cordage Co., 214 Mo. 685; State v. Gamma, 215 Mo. 100; Milling Co. v. Blake, 242 Mo. 23; George v. Railroad, 249 Mo. 197.

*Green & Green, W. J. Orr, J. D. Brooks, Hamlin & Seawell* and *Lewis Luster* for respondents.

(1) The oral statement of the trial court, made in sustaining the motions for new trial and in arrest of judgment, cannot be considered, and this case stands as if said oral statement had not been made. R. S. 1909, sec. 2023; Hewett v. Steel, 118 Mo. 463; Taylor v. Scherpe, 47 Mo. App. 257; Pennowfsky v. Coerver, 205 Mo. 135. (2) On the record proper, we have an order sustaining a motion for a new trial which may have been sustained on grounds that rest peculiarly in the sound discretion of the trial court and on grounds

not even specified in the motion for new trial. The higher courts never interfere with the order of the lower court granting a new trial unless this discretion is abused. Then, too, if there be any good reason appearing on the record for granting a new trial, the order of granting it will be upheld. Warren v. Cowden, 167 Mo. App. 493; Green v. Railroad, 211 Mo. 18; Smart v. Kansas City, 208 Mo. 162; Lovell v. Davis, 52 Mo. App. 342; Bank v. Armstrong, 92 Mo. 265; Farrell v. Transit Co., 103 Mo. 457. (3) The verdict of the jury is uncertain and ambiguous, and the trial court was justified in arresting the judgment, and granting a new trial because of the ambiguous verdict; and after the jury is discharged the court is not authorized to amend the verdict to conform to what he believes to be the intention of the jury, and the appellate court certainly could not assume such power. Newton v. Railroad, 168 Mo. App. 199; Haumuller v. Ackerman, 130 Mo. App. 387; Gaither v. Wilmer, 5 L. R. A. 757; Dyer v. Combs, 65 Mo. App. 148; Poulson v. Collier, 18 Mo. App. 604. (4) A constitutional question is involved in this cause; was properly raised in the trial court by the respondent, and so far as the records show the trial court may have granted a new trial because in his opinion the law relating to motor vehicles, which was the basis of plaintiff's action, is unconstitutional. The petition does not state facts sufficient to constitute a cause of action against either defendant, because based upon an unconstitutional law, and this question can be raised at any time. McGrew v. Railroad, 230 Mo. 511; Simpson v. Iron Works, 144 S. W. 895; Bank v. Bennett, 138 Mo. 494; Bennett v. Railroad, 105 Mo. 642; Logan v. Fields, 192 Mo. 66. (5) The statute relating to motor vehicles, as enacted by the Legislature of 1911, and found in Laws 1911, p. 322, is unconstitutional. Daugherty v. Thompson, 140 N. W. 615; Berry v. Motor Car Co., 141 N. W. 529; State ex rel. v. Ashbrook, 154 Mo. 375; Hannibal v. Railroad, 31 Mo. App. 334; State ex rel. v. Herman, 75 Mo. App. 346; State v. Granneman, 132 Mo. 326; State v. Tea & Coffee Co., 131 Mo. 634; Witzman v.

Railroad, 131 Mo. 618; St. Louis v. Weitzel, 130 Mo. 616; State ex rel. v. Hedge, 135 Mo. 112. (6) Where a father purchases an automobile and maintains it as a family vehicle, with restricted uses, and a son had been cautioned not to use the car without first obtaining permission, and the son violating this injunction, uses the car without permission, upon an independent pleasure trip of his own accompanied by his friends but by no other member of the father's family, the father cannot be held responsible in case the son, while negligently driving the car, causes injury. Parker v. Wilson, 43 L. R. A. (N. S.) 87; Riley v. Roach, 37 L. R. A. (N. S.) 834; Danforth v. Fisher, 21 L. R. A. (N. S.) 93; Cunningham v. Castle, 111 N. Y. S. 1057; Neff v. Brandeis, 33 L. R. A. (N. S.) 933; Lotz v. Hanlon, 10 L. R. A. (N. S.) 202; Cohen v. Borgenecht, 144 N. Y. S. 399; Maher v. Benedict, 108 N. Y. S. 228; Patterson v. Cates, 152 Fed. 481; Slater v. Thresher Co., 5 L. R. A. (N. S.) 598; Stewart v. Branch, 95 N. Y. S. 161; Reynolds v. Buck, 103 N. W. (Iowa) 946; Doran v. Thomsen, 19 L. R. A. (N. S.) (N. J.) 335; Garretzen v. Duenckel, 50 Mo. 104; Evans v. Automobile Co., 121 Mo. App. 266; Maddox v. Brown, 36 Am. Rep. 336; Broadstreet v. Hall, 10 L. R. A. (N. S.) 933, and notes; Howe v. Leighton, 75 Atl. 102; Spelman v. Delano, 177 Mo. App. 28; Linville v. Nissen, 77 S. E. (N. C.) 1096; Tanzer v. Read, 160 N. Y. App. Div. 584, 145 N. Y. S. 708; McFarlane v. Winters, 155 Pac. 437; Heissenbuttel v. Meagher, 147 N. Y. Supp. 1087; B. & R. Co. v. McLeod, 7 D. L. R. 579; Farthing v. Strouse, 158 N. Y. Supp. 841; Loehr v. Abell, 140 N. W. (Mich.) 926; Armstrong v. Sellers, 62 So. (Ala.) 28; Schumer v. Register, 78 S. E. (Ga.) 731; Roberts v. Schanz, 144 N. Y. Supp. 841; University of Missouri Bulletin, Law Series 5 (December, 1914), p. 30; Case & Comment (August, 1915), p. 220; Harvard Law Review (November, 1914), p. 91. (7) Any verdict under the evidence in this case for more than nominal damages would be excessive, even in case of liability; and the instruction given on behalf of plaintiff on the measure of damages, is erroneous. Hickman

v. Railroad, 22 Mo. App. 345; Knight v. Lead & Zinc
Co., 75 Mo. App. 541; Schaub v. Railroad, 160 Mo. 93;
McGowan v. Steel Co., 109 Mo. 533; Parsons v. Rail-
road, 94 Mo. App. 296; Goss v. Railroad, 50 Mo. App.
614; Coleman v. Lumber Co., 105 Mo. App. 254; Levhy
v. Davis, 121 Mo. 227.

WOODSON, J.—The plaintiff brought this suit in
the circuit court of Howell County against the defend-
ants to recover $10,000 damages for the death of her
husband, through the alleged negligence of the latter in
so running and operating an automobile as to frighten
the team of mules hitched to the wagon in which he was
riding, and thereby causing it to run away and over-
turn the wagon, which fell upon and crushed and killed
him.

The verdict and judgment were for the plaintiff,
and on motion a new trial was ordered, from which or-
der the plaintiff duly appealed the cause to the Spring-
field Court of Appeals, which reversed the judgment
ordering the new trial and remanded the cause with di-
rections to the circuit court to reinstate the verdict and
judgment as originally entered therein. On motion for
a rehearing one of the judges of the Court of Appeals
dissented from the former opinion and certified the
cause here, because, as stated, it was in conflict with
certain decisions of this court.

The facts of the case are few and largely undis-
puted. The facts as disclosed by the record are these:

The plaintiff and the deceased were husband and
wife; on May 27, 1912, he was killed by means of a
farm wagon, in which he was riding, turning over and
upon him, and crushing him to death, caused by the
team of mules hitched thereto becoming frightened at
the automobile owned by defendant, R. S. Hogan, and
driven by his son, J. E. Hogan, the other defendant.
The occurrence took place on a public highway in Howell
County, Missouri.

R. S. Hogan owned the car, and had done so for a
year or more prior to the date of the injury; he pur-

chased it for the use of himself and family; while the son J. E. Hogan had, with the permission of his father, driven the car in the performance of his duties to the latter, and for the pleasure of his mother and other members of the family, yet he was instructed by the father, R. S. Hogan, to never take the car out or drive it for his own purposes, without his permission or that of his mother; upon this occasion the son was driving the car for his own purposes without the authority of his father or mother; the son, J. E. Hogan, was a member of his father's family; the father kept no hired chauffeur; the machine had been bought and maintained for the use of the family as a pleasure vehicle; and it was driven and used prior to the accident by the son, J. E. Hogan, and two other brothers of defendant J. E. Hogan. The father himself testified in a deposition which was offered by plaintiff as a part of her case without objection:

"Well, we use it just as a family vehicle, as a pleasure car, and for such use as the family might desire—just a family vehicle."

Both defendants testified that the son lived at the home of his father as a member of the family, paid no board whatever, and was employed in the bank of which the defendant father was president.

It appeared from the despositions of the defendants introduced by the plaintiff that the son had used the machine from time to time for a period of more than a year, and that the father granted him the use of it whenever he asked for it.

The testimony of a number of witnesses was to the effect that the defendant's son had been seen by them driving this automobile on various occasions prior to the time of the accident, both in the day time and in the evening, sometimes with other members of the Hogan family in the machine as passengers, and at other times with only himself and his wife or other friends riding with him. The testimony further disclosed that the machine was kept in a garage at the father's home, and

that defendant J. E. Hogan learned to drive from the use of this very machine in question.

The plaintiff introduced the depositions of R. S. and J. E. Hogan, in presenting her case in chief. By these depositions it is shown that R. S. Hogan did not permit his son Jack to use the automobile at pleasure; that none of his sons were at liberty to use the machine at pleasure; and in answer to the question, "Was he permitted to use the machine for his own pleasure and that of his friends?" the answer was, "Not without permission."

From this deposition it further shows that defendant R. S. Hogan did not know of the son ever taking the automobile without asking either him or his mother; and that he never knew of his taking the machine out and using it for himself and friends, outside of the family.

The father was not at home on the day of the accident, but was in another part of the State.

There was evidence tending to prove that the automobile was being carelessly and negligently driven at the time of the accident, and that was the cause of the team becoming frightened and running away, which resulted in the injury, as before stated; there was also evidence tending to show the contrary. Since, however, the jury has passed upon that question, no useful purpose would be served by detailing it here.

I.   This case is properly here, not only on account of the fact that the Court of Appeals certified it here under the mandate of the Constitution, but also because certain constitutional questions are involved, which will be presently considered. For the reasons stated we will pay no further attention to the question of the jurisdiction of this court over this case.

Appellate Jurisdiction.

II.   The large question presented by this record for determination is stated by counsel for appellant in this language:

"Where one owns and maintains an automobile for the use and pleasure of himself and family, and an injury is inflicted through the negligence of the person in charge of the automobile while using the machine for one of the purposes for which it is kept, the owner is liable. And this is true whether the person driving the machine at the time is a member of the family or a hired chauffeur."

Liability of Father for Son's Negligence.

In support of this proposition we are cited to the following authorities: Denison v. McNorton, 228 Fed. 401; Stowe v. Morris, 147 Ky. 386; McNeal v. McKain, 33 Okla. 449; Campbell v. Arnold, 219 Mass. 160; Bourne v. Whitman, 209 Mass. 155; Smith v. Jordan, 211 Mass. 269; Kayser v. Van Nest, 125 Minn. 277, 51 L. R. A. (N. S.) 970; Ploetz v. Holt, 124 Minn. 169; Guignon v. Campbell, 80 Wash. 543; Switzer v. Sherwood, 80 Wash. 19; Birch v. Abercrombie, 74 Wash. 486, 50 L. R. A. (N. S.) 59; Allen v. Bland, 168 S. W. 35 (Civil Appeals of Texas, June, 1914); Hazzard v. Carstairs, 244 Pa. St. 122; Moon v. Matthews, 227 Pa. St. 488; Cowell v. Saperston, 149 App. Div. 373, 208 N. Y. 619; Missell v. Hayes, 86 N. J. L. 348; Davis v. Littlefield, 97 S. C. 171; Winn v. Haliday, 69 So. 685 (Miss. 1915); McHarg v. Adt, 163 App. Div. 782 (N. Y. 1914); Carrier v. Donovan, 88 Conn. 37; Hiroux v. Baum, 137 Wis. 197; Lashbrook v. Patten, 1 Duv. (Ky.) 317; Winfrey v. Lazarus, 148 Mo. App. 388; Daily v. Maxwell, 152 Mo. App. l. c. 422; Marshall v. Taylor, 168 Mo. App. 240; Hays v. Hogan, 180 Mo. App. 237.

Preliminary to the discussion of this question, it may not be improper to state that the trial court granted the new trial because under the record it was of the opinion the defendant, R. S. Hogan, was not liable, and that the verdict of the jury was so indefinite and uncertain a proper judgment could not be rendered thereon; in that connection the court also stated that it did not sustain the motion for a new trial because the verdict was not supported by the evidence or was against the

weight of the evidence, nor on the ground of passion or prejudice of the jury against the defendants.

Counsel for respondents contend that this court has no authority to consider the reasons assigned by the trial court for granting the new trial, because those reasons were not entered of record as required by Section 2023, Revised Statutes 1909, but were preserved, if at all, in the bill of exceptions.

This court has repeatedly held that where a statute such as this requires a matter to be spread of record, it must be done and cannot be preserved in a bill of exceptions and *vice versa,* if required to be saved in the bill of exceptions it cannot be preserved by the record proper. [Hewitt v. Steele, 118 Mo. 463; Taylor v. Scherpe, 47 Mo. App. 257; Pennowfsky v. Coerver, 205 Mo. 135.] Notwithstanding this insistence which is well founded, still we may consider the same as throwing light upon the view the circuit court took of the case during the progress of the trial, and the view he had of it when passing on the motion for a new trial.

This carries us back to the large proposition before quoted. By reading it in the light of the remarks made by the trial court in granting a new trial, it is apparent that during the trial the court was of the same opinion as counsel for appellant as to the liability of R. S. Hogan, namely, that he was liable by virtue of the facts that he was the owner of the car, that it was for the use and pleasure of himself and family, that it was being used at the time of the injury for the pleasure of the son (a member of the family) and his friends, and the further fact that it was being negligently driven by the son; and that is true whether the son was driving the car for his own use, with or without the authority of the father. In short, the father was liable in this case because he permitted his son, a member of his family, to drive the car upon other occasions, a piece of dangerous machinery, even though he was not about the father's business, but his own. But upon reflection the trial court in passing upon the motion for a new trial evidently changed its mind as to the liability of the father

under those facts, which as that court said, were clearly established by the evidence, but held he was not liable thereunder.

From those two rulings it is clear that the court was of the opinion that there was no evidence introduced tending to show that J. E. Hogan, the son, was the agent and servant of R. S. Hogan, or that he was at the time of the injury acting for his father. In other words that there was no evidence tending to show that the relation of master and servant existed between them, and therefore the father was not liable to the plaintiff on account of permitting his son, a member of his family, to use a dangerous piece of machinery on a public highway. We are likewise of the opinion that this record fails to show that J. E. Hogan was the agent of R. S. Hogan in driving the car upon the occasion in question, or that he was performing any duty for the father at that time. In fact, the evidence shows he was not; consequently, the plaintiff is not entitled to a recovery in this case against R. S. Hogan upon the ground that J. E. Hogan was his agent and servant.

By this process of elimination we now return to the question, is the father liable to the plaintiff in this case, for the reason that he permitted his son to use this car, a dangerous piece of machinery, as counsel for plaintiff terms it, for his personal use or pleasure.

Counsel for plaintiff, as before stated, contend for the affirmative of this proposition, while those for the defendant insist to the contrary.

We have carefully read all the authorities heretofore cited by counsel for plaintiff, and are satisfied that many of them are directly in point and others announce the general doctrine that the father, in such a case, is liable for negligence of the son.

There has been so much said and written upon that question as shown by the copious quotations taken from the opinions of courts of the various states, as appear in briefs of counsel for plaintiff, it would be difficult to add any thing new thereto; so we will content ourselves by saying that the authorities cited fully sustain the

rule of law contended for by counsel for plaintiff. But the authorities are not all one way upon that question. Nor are we satisfied with the soundness of the rule announced by the authorities cited by counsel for plaintiff. The position of counsel for defendants upon that question is stated in this language:

"Where a father purchases an automobile and maintains it as a family vehicle, with restricted uses, and a son had been cautioned not to use the car without first obtaining permission, and the son violating this injunction, uses the car without permission upon an independent pleasure trip of his own, accompanied by his friends but by no other member of the father's family, the father cannot be held responsible in case the son, while negligently driving the car, causes injury."

And in support thereof we are cited to the following cases; Parker v. Wilson, 43 L. R. A. (N. S.) (Ala.) 87; Riley v. Roach, 37 L. R. A. (N. S.) (Mich.) 834; Danforth v. Fisher, 21 L. R. A. (N. S.) 93; Cunningham v. Castle, 111 N. Y. S. 1057; Neff v. Brandeis, 39 L. R. A. (N. S.) 933; Lotz v. Hanlon, 10 L. R. A. (N. S.) 202; Cohen v. Borgenecht, 144 N. Y. S. 399; Maher v. Benedict, 108 N. Y. S. 228; Patterson v. Kates, 152 Fed. 481; Slater v. Thresher Co., 5 L. R. A. (N. S.) 598; Stewart v. Baruch, 93 N. Y. S. 161; Reynolds v. Buck, 103 N. W. (Iowa) 946; Doran v. Thomsen, 19 L. R. A. (N. S.) (N. J.) 335; Garretzen v. Duenckel, 50 Mo. 104; Evans v. Automobile Co., 121 Mo. App. 266; Maddox v. Brown, 36 Am. Rep. 336; Broadstreet v. Hall, 10 L. R. A. (N. S.) 933, and notes; Howe v. Leighton, 75 Atl. 102; Spelman v. Delano, 177 Mo. App. 28; Linville v. Nissen, 77 S. E. (N. C.) 1096; Tanzer v. Read, 160 N. Y. App. Div. 584, 145 N. Y. S. 708; McFarlane v. Winters, 155 Pac. 437; Heissenbuttel v. Meagher, 147 N. Y. S. 1087; B. & R. Co. v. McLeod, 7 Alberta L. R. 349, 7 D. L. R. 579; Farthing v. Strouse, 158 N. Y. S. 840; Loehr v. Abell, 140 N. W. (Mich.) 926; Armstrong v. Sellers, 62 So. (Ala.) 28; Schumer v. Register, 78 S. E. (Ga.) 731; Roberts v. Schanz, 144 N. Y. S. 824; University of Missouri Bulletin, Law Series 5 (December, 1914),

p. 30; Case & Comment (August, 1915), vol. 22, p. 220; Harvard Law Review (November, 1914), vol. 28, p. 91.

By carefully reading the position of counsel for defendants before quoted, it will be seen that it includes all the facts that can possibly be deducted from the evidence preserved in this record; and if defendant R. S. Hogan's liability cannot be predicated upon those facts, then a recovery cannot be had against him in this case.

Preliminary to the legal discussion of this question, it may add clarity thereto to restate the fact that this record is totally barren of all evidence tending to show that J. E. Hogan was the agent or servant of R. S. Hogan, or that the former was driving the car at the time of the injury for his use or benefit, without, as previously stated, the facts that J. E. Hogan was a member of the former's family, that the car was purchased for the family use, and that it was being driven by the latter at the time of the injury, created that relation. This latter proposition will be considered later.

Attending the former, in the case of Garretzen v. Duenckel, 50 Mo. 104, l. c. 107, the court said:

"A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, though in general he is responsible for the manner in which they execute his orders, and for their negligence in selecting means by which the orders are to be carried out. In determining whether the particular act is done in the course of the servant's employment it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act was done while the servant was at liberty from his service, and pursuing his own ends exclusively, there can be no question that the master is not responsible, even though the injuries complained of could not have been committed without the facilities afforded by the servant's relations to his master."

While it is true that the court held the defendant liable in that case, yet it was because the servant was acting within the scope of his authority when he was showing

the gun. This case has been cited with approval of this court so often it would be useless to refer to them. But it should be borne in mind that in the case at bar by the very act of driving the machine J. E. Hogan violated the orders of R. S. Hogan, for he had no authority whatever to drive it without first obtaining the latter's permission to so do. That fact differentiates this case from the Garretzen-Duenckel case just considered. Nor will it be inappropriate to here state that it has never been the law of this State that the father is liable for the torts of even his minor children, that is, liable therefor merely because of the relationship of parent and child. [Bassett v. Riley, 131 Mo. App. 676; Baker v. Haldeman, 24 Mo. 219; Paul v. Hummel, 43 Mo. 119.]

For stronger reasons the father should not be liable for the torts of his adult son.

The reports are full of cases holding that where a servant, even with the master's consent, takes the latter's car and while using it for his own purposes, negligently injures a person thereby, the master is not liable. [Guthrie v. Holmes, 272 Mo. 215; Cunningham v. Castle, 111 N. Y. 1057; Howe v. Leighton, 75 Atl. 102; Patterson v. Kates, 152 Fed. 481; Slater v. Thresher Co., 5 L. R. A. (N. S.) (Minn.) 598; Lotz v. Hanlon, 10 L. R. A. (N. S.) (Pa.) 202; Neff v. Brandeis, 39 L. R. A. (N. S.) 933; Danforth v. Fisher, 21 L. R. A. (N. S.) 93; Daily v. Maxwell, 152 Mo. App. l. c. 426.]

In the case of Maddox v. Brown, 71 Me. 432, 36 Am. Rep. 336, where a minor son who had been permitted to use his father's horse and wagon without restriction, took them upon one occasion, in the absence and without the knowledge of the father, on business of his own, and left the horse unhitched in the street and the horse ran away and injured the plaintiff's carriage, it was held that the father was not liable for the damage done the carriage, because the son was not the agent or servant of the father.

In Maher v. Benedict, 108 N. Y. S. 228, it was held that the owner of an automobile is not liable for injuries resulting from the negligence of his son in driving a car,

merely because of the relationship, or because he permitted his son to drive the car.

The same rule is announced in the case of Reynolds v. Buck, 103 N. W. (Iowa) 946.

In Parker v. Wilson, 43 L. R. A. (N. S.) (Ala.) 87, where an eighteen-year-old boy took his father's automobile for his own use without the father's knowledge, but by his implied general permission, it was held that the son was not the agent of the father and that the latter was not liable for the negligence of the former in operating the car. The court used this language:

"The meager facts before us, though interpreted with favor to the appellant, present the case of a mere permissive use of the father's vehicle by the son for his own purposes of business or pleasure; on what principle can it be said, in this state of the case, that the son was the servant of the defendant and acting within the course or scope of his employment? It seems, clear that the ordinary rule of master and servant has no application to such a case, and prior to the advent of the automobile the contrary doctrine had no general currency in this country or England." (Citing many cases and continuing:)

"We find Daily v. Maxwell, 152 Mo. App. 415; Stowe v. Morris, 147 Ky. 386, 39 L. R. A. (N. S.) 224, and Moon v. Matthews, 227 Pa. St. 488, 29 L. R. A. (N. S.) 856, 136 Am. St. 902, referred to as sustaining appellant's contention for appellee's liability in this case. The first named of these cases is closely in point and does clearly hold with the appellant. In the second there were members of the family, other than the driver, in the machine. The third may be discriminated on the very substantial ground that the machine was being operated by a driver regularly employed for the purpose. The doctrine contended for amounts to this: that the pleasure of the family in its utmost detail is the business of the father. As applied to the case at hand, it means that the son, in pursuit of his own pleasure, with an automobile owned by his father, was engaged in the business of the

father. But the doctrine, we think, has no firm foundation in reason or common sense. In theory it overlooks well settled principles of law; in practice it would interdict the father's generosity, and his reasonable care for the pleasure or even the well being of his children by imposing a universal responsibility for their acts. As said in Doran v. Thomsen, 76 N. J. L. 754, 19 L. R. A. (N. S.) 335, 131 Am. St. 677: 'It would subject a parent to liability if he bought for his son a baseball or for his daughter a golf club, and by permitting them to be used by his children for their appropriate purposes, injury occurred. It bases the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child. This proposition ignores an essential element in the creation of that status as to third persons; that such use must be in furtherance of, and not apart from, the master's service, and control, and fails to distinguish between a mere permission to use and a use subject to the control of the master and connected with his affairs.' In the case from which we have quoted it was held, on facts substantially identical with those in the case at bar, that the owner of the automoblie and father of the driver was not liable. So in Maher v. Benedict, 123 App. Div. 579, 108 N. Y. S. 228. The same conclusion finds support in Smith v. Jordan, 211 Mass. 269, which case is stated and commented upon in 75 Cent. L. J. 43, as follows: 'Thus, in the Massachusetts case, a father purchased an automobile for the use of his family, and his minor son was the only member of the family licensed to operate it. The wife had permission to use it at her pleasure, and the son was expected to obey any request of his mother to take her out in the car. Plaintiff was injured by the son's negligence when he was taking his mother out at her request. The court said: "If, instead of hiring a stranger, the father chose to have the same work performed by his minor son, to whose time and services he was entitled as a matter of law, it could not be ruled as a matter of law that a jury might not find the business to be that of the father. This is not a

case of mere permissive use of the father's vehicle by the son for his own pleasure.'' This authority, therefore, might even be deemed against, rather than in support of, the principal case (Stowe v. Morris, supra), especially when it was stated in another part of the opinion: ''If the act is not done by the son in furtherance of the father's business, but in performance of some. independent design of his own, the father is not liable.'' Liability was placed merely on the fact that there was room in the evidence for the jury to find that a request by defendant's wife was equivalent to direction by him for his son, as his hired man to perform for him a service.' ''

In Doran v. Thomsen, 19 L. R. A. (N. S.) 335, the father owned an automobile, which he kept upon his premises, and his daughter, about nineteen years of age, was accustomed to drive it, and did so whenever she felt like it; asking permission to use it when she felt like it; asking permission to use it when the father was at home, but when not at home took it sometimes without permission. There was no proof that the daughter was actually employed by the father to operate the machine. The court said: ''No other member of the family was with her, so that the machine was then being run by the daughter upon no errand of the father.'' She was allowed to operate the machine from time to time and drove it whenever she felt like it, as also did her brother; and defendant testified that he bought the machine ''for our own use,'' the same as a person might buy a horse or carriage for the family, and that it was operated mostly by his son and daughter. On the day of the accident the father was absent in New York City, and did not know that his daughter was intending to use the automobile, but he knew that she did use it whenever she desired to do so. On this occasion she took it of her own accord without asking permission, and had three friends in the car with her and was out for her own pleasure. In this case against the father on account of the daughter negligently injuring a person in the highway, it was held that such proof was not sufficient to constitute the daughter a servant or agent of the master,

and that a motion for direction of a verdict for the defendant should have prevailed.

This case was well considered and many authorities cited, and as said by counsel for defendants: "The facts are in many respects similar to the case at bar, but the case at bar is even stronger on behalf of the father for the reason that defendant J. E. Hogan was directed never to use the car without first asking permission of his father or mother, and on the day of the accident in question was using the machine in direct violation of this injunction."

In Riley v. Roach, 37 L. R. A. (N. S.) 834, it was held that if the owner of an automobile, upon leaving home, instructed the chauffeur not to take the machine out without orders from himself or wife, he is not liable for injury done by the machine while it is being used to take out one of his guests, his wife's sister, but when so used it was not with the expressed consent of the owner or his wife.

In B. & R. Co., Ltd., v. McLeod, 7 D. L. R. (Alberta) 579, a son was held to be using the automobile for his own purpose and not to be acting as his father's agent at the time of the accident occurred, where it appeared that he had driven his father's car for three years and had an opportunity to take the car and use it whenever he liked. That on the day of the accident, he went to the garage, took the car for a ride with some friends, and during the course of the ride the accident occurred. The court approved the decision in Doran v. Thomsen, 19 L. R. A. (N. S.) 335, where the parent was held not liable in a case where the child was using the car alone for her own purposes.

In Tanzer v. Read, 145 N. Y. Supp. 708, the wife was driving the car purchased for family use. She was out for her own pleasure and the courts held that while engaged in such recreation, she was not in any sense acting as her husband's agent, even though she utilized his property as a means for pleasure.

In Farthing v. Strouse, 158 N. Y. S. 840, the court held that there was no presumption that the defendant's

wife was in his service and engaged in his business, and that the principle of *respondeat superior* does not apply where it appeared that the wife was using the car alone for her own purposes, although the husband had given her authority to use it for pleasure or for any purpose whatever.

The case of Heissenbuttel v. Meagher, 147 N. Y. S. 1087, is "on all-fours" with the case at bar. The opinion is short and to the point. In discussing the question the court said:

"The plaintiff, while standing in a public street, waiting for a surface car, was struck and injured by an automobile belonging to defendant and driven by his son, a young man twenty-four years of age. This son was pursuing his studies as a law student, and lived with his father as a member of the family. The automobile was a pleasure vehicle kept by defendant for the use of himself and his family. His son was privileged to use it for his individual purposes, whenever he so desired. It was customary, also, for the son to act as chauffeur of the car when it was used by defendant or other members of the family. On the occasion of the accident, the son had taken the car out for a pleasure drive, accompanied by several of his friends. Neither defendant nor any other member of his family, except his son, was in the party.

"It is evident from these facts that when the accident happened the car was neither expressly nor constructively in the use or service of the defendant, and that in driving the car the son was in no way acting as the defendant's agent. Under these circumstances, we hold that defendant is not liable for his son's negligent operation of the car. The principle involved has been applied in so many cases that the citation of but a few will suffice. [Tanzer v. Read, 160 App. Div. 584, 145 N. Y. S. 708; Cunningham v. Castle, 127 App. Div. 580, 111 N. Y. S. 1057; Maher v. Benedict, 123 App. Div. 579, 108 N. Y. S. 228.]

"The judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs. All concur."

In Loehr v. Abell, 140 N. W. (Mich.) 926, it was held that a father is not liable for the negligence of his minor son when using the automobile with the father's permission, but for his own pleasure, the son being a licensee only.

In Armstrong v. Sellers, 62 So. (Ala.) 28, it was held that the owner of an automobile who habitually consented to his wife's use of the machine is not liable, in the absence of statute, to one run down by the machine which was being driven by a third person, who had the privilege to use the machine and with whom the owner's wife was riding.

In Schumer v. Register, 78 S. E. (Ga.) 731, it was held that no cause of action was set forth against the owner of an automobile by a count which alleged that the defendant, a widow, having exclusive control of her minor daughter, was the owner of an automobile, and that the daughter was riding in it, having authority and command over its movement, and that it was being driven by a third party, when it was negligently run into the plaintiff. It was further held that this count would set forth no cause of action under a statute making every person liable for the torts committed by his child or servant by his command, or in the prosecution of his business, although an amendment of the count alleged that the automobile was kept for the comfort and pleasure of the owner's family who were authorized to use it at any time for their pleasure, it being held that in order to render the parent liable under such statute the child must have been engaged in his parent's business.

In McFarlane v. Winters, 155 Pac. (Utah) 437, where all the authorities are reviewed, the court in speaking of the rule announced by the Missouri Courts of Appeals, says: "Such a doctrine, in the ordinary affairs of life, would be monstrous to say the least. But, if it were assumed that a distinction should be made between automobiles and other vehicles and instrumentalities, it should be made by the Legislature, the lawmaking power, and not by the courts who merely declare the law as they find

it. We, however, can conceive neither reason nor logic in attempting to make such a distinction."

In Linville v. Nissen, 77 S. E. (N. C.) 1096, a son about twenty years old was driving with three of his friends in the car. There was evidence that the car was maintained for the use of the owner and his family. There the court held that the trial judge should have directed a nonsuit as to the father, for the reason that the evidence is undisputed that the son at the time of the accident was not engaged in any business for the owner, but was about his own business or pleasure, and no jury question was raised on that point. This is one of the many cases which hold as a matter of law that the father is not liable.

In commenting upon the decision in this case by the Springfield Court of Appeals, the University of Missouri Bulletin, vol. 15, no. 34, Law Series 5, December, 1914, p. 33, said:

"The statement from Doran v. Thomsen, above quoted, points out the fallacy of the Missouri cases. The creation of the relation of master and servant should not be based upon the purpose which the parent had in mind in buying the automobile and the permissive use by a member of his family. One might keep an automobile for the use of the members of a club, the students of a certain school, the residents of a certain town, or for the general public; yet who will say in case he permits such persons to use the machine and they injure a third party, that the relation of master and servant existed, and that in using the automobile for one of the purposes for which it was bought, the clubman or the student, or a member of the general public, was in the business of the owner, and that he is, therefore, liable for their acts.

"If public interest demands that ownership coupled with a permissive use of an automobile by a member of the owner's family be made a basis of liability for injuries to third parties, this result can be reached only by a departure from the established law of agency.

"It is submitted that STURGIS, J,, was right in holding Hays v. Hogan in conflict with Walker v. Wabash Railroad, and Garretzen v. Duenckel."

The Harvard Law Review, November, 1914, page 91, discusses the question of the use of the automobile by the son for his own pleasure, and says:

"Suppose, however, a frail son, or one injuring his health by too zealous an application to work. His affectionate, though wealthy, father is much concerned. He buys a machine, and tells his son to use it in the pursuit of health and pleasure. While thus pursuing, the son pursues and runs down the plaintiff instead. If these facts could be proved, a not unwilling jury might find that the son's frolic was not 'a frolic of his own,' but really of his father's. The question is whether any father does this. It is submitted that most of them do not. Such an idea of vicarious enjoyment is far too fanciful—as much so in the case of an automobile as it would be, for instance, if the father brought a pair of roller skates for the son, or told him to use the family roller skates. The argument might as well be extended to a chauffeur who is occasionally allowed the use of the car so that he will be more satisfied with his work," and concludes the discussion with the remark: "Let not the ancient maxim be transformed to read: *Qui facit per auto facit per se.*"

Case and Comment, August number, 1915, at page 220, in an article by Joseph T. Winslow of the Massachusetts bar on the subject of the owner's liability for injury occurring while the automobile is being used by members of his family, announces the general rule to be that "a father cannot be held liable for the negligent openation of his car by his son merely because he owned the car, or because he permitted the son to drive it whenever he wished, or because the driver was his son," and after reviewing the authorities, says in the summary (p. 226):

"It seems that where a child acts as the chauffeur for the family, of a car kept for family purposes, the owner will generally be held liable for injuries resulting from the negligent operation of the car by the child while he is driving it for other members of the owner's family who have permission to use it.

"It appears, however, that where a child or a member of the owner's family at the time an injury occurs is driving the car for his or her own purposes, the owner will not as a rule be liable, although the Missouri Court of Appeals in some cases has taken the view that a parent may be held liable under such circumstances if the car was one which was kept for general family use, upon the theory that it was being used by the owner's agent for one of the purposes for which it was kept by him.

"In case the owner of a car kept for family use furnishes a chauffeur, other than a member of his family, he is ordinarily liable for an injury occurring while the chauffeur is driving the car under orders of some member of the owner's family."

The writer concludes by stating that the cases decided by the Missouri Appellate Courts are, in his opinion, unsound upon principle and unsupported by the weight of authority.

After a careful consideration of all the authorities cited, we have reached the same conclusion, and hold that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person for injuries sustained thereby, through the negligence of his minor son while operating the same on a public highway, in furtherance of his own business or pleasure; and the fact that he had the father's special or general permission to so use the car is wholly immaterial.

III. It is next insisted by the counsel for plaintiff that the ownership of the car by the father and that it was being driven by his son at the time of the injury with the former's consent raises a presumption that the latter was acting within the scope of his authority, and therefore, the burden of proof rests upon the father to show the contrary.

*Presumption of Agency.*

The vice of this insistence consists in assuming that the ownership of the car by the father and his consent of its use by the son, constituted the latter his agent and servant, and therefore at the time of the injury the car of R. S. Hogan was being driven by his servant J. E. Hogan.

That is *non sequitur*. That sequence would no more follow in this case than it would in a case where, if a member of this court should lend his car to a friend to drive to Fulton and while *en route* he should negligently run over and injure a third person. In both cases the agency would have to be first established and then, and not until then, would the presumption arise that the son or friend was acting within the scope of his authority, and thereby shift the burden of proof upon the father. [Guthrie v. Holmes, supra.]

Moreover, if the insistence of counsel for plaintiff is correct, then the court would be required to enforce one presumption upon another, namely: First that the son was the agent of the father, and, second, that the agent was acting within the scope of his authority. This is never done. A presumption must be based upon a fact, and not upon inference or upon another presumption. [Yarnell v. The Kansas City, Fort Scott & Memphis Ry. Co., 113 Mo. 570; Bigelow v. Metropolitan Street Ry. Co., 48 Mo. App. 367; State v. Lackland, 136 Mo. 26; Glick v. Railroad, 57 Mo. App. 97.]

The same rule governs expert opinions. It is not proper to predicate an expert opinion upon another. They must be based either upon facts, or facts assumed to be true stated in the hypothetical question. [McAnany v. Henrici, 238 Mo. 103.]

The points so far decided affect R. S. Hogan, the father alone, but the remaining questions are common to both defendants.

IV. Counsel for defendants contend that Section 8 and 9 of the Act of 1911, Laws 1911, page 322,

requiring the operator of an automobile upon a pub-
lic highway, to stop the same when sig-
Constitutional  naled to so do by a driver of a team of
Statute.
horses, etc., and to exercise the highest
degree of care, etc., are unconstitutional, null and void.

This contention is not well founded. This court
in the case of State v. Swagerty, 203 Mo. 517, held
the Act of 1903, approved March 23, 1903, which
for the purposes of this case is practically the same
as the Act of 1911, was constitutional.

That case has received the approval of this court,
in the cases of the City of St. Louis v. Hammond,
—Mo.—, and Roper v. Greenspon, 272 Mo. 228, both
decided at the present term of this court, the latter In
Banc. We, therefore, rule this contention against the
defendants.

V. Counsel for defendants insist that the order
of the trial court granting the new trial was proper
for the reason that the verdict of the jury was so
indefinite and uncertain, that a valid judg-
Verdict.
ment could not be rendered thereon. The fol-
lowing is a copy of the verdict:
—Mo.—, and Roper v. Greenspon, 272 Mo. 288, both
plaintiff and against both defendants J. E. Hogan
and R. S. Hogan and assess her damages at the sum
of $6,500, Six Thousand $5.00 Dollars.''

In support of the verdict six of the jurors filed
affidavits stating that the amount of the verdict agreed
upon by the jury was for the sum of $6,500.

That such affidavits are competent is no longer
an open question in this State: State v. Underwood,
57 Mo. 40, l. c. 52; State v. Rush, 95 Mo. 199, l. c. 206;
Devoy v. St. Louis Transit Co., 192 Mo. 197, l. c. 218
and 219.

The reports of other courts are also rich with
such rulings. [Hamburg-Breman Fire Ins. Co., v.
Pelzer Mfg. Co., 76 Fed. l. c. 481; Capen v. Stough-
ton, 16 Gray, 364; West v. Bank, 63 Ga. 230; Heinkin
v. Barbrey, 40 Ga. l. c. 252; Mattox v. United States,

146 U. S. 1. c. 148; Davis v. Huber Mfg. Co., 119 Iowa, 56; Jackson v. Dickenson, 15 Johns. (N. Y.) 309; Peters v. Fogarty, 55 N. J. L. 386; Dalrymple v. Williams, 63 N. Y. 361; Wolfgram v. Town of Schoepke, 123 Wis. 19.]

When we read the verdict in this case in the light of the affidavits filed, there can be no reasonable doubt but what the jury agreed upon the sum of $6,500 as the amount thereof. This is also manifest from the figures $6,500, the first sum stated therein, but when the attempt was thereafter made to state the amount in words, the scrivener wrote the words "Six Thousand" and for some reason undisclosed added "$5.00 Dollars," thereby making the entire verdict as to the amount, read "at the sum of $6,500, Six Thousand $5.00 dollars." It is perfectly clear from the face of the entire record, that is, the petition, answer, evidence, verdict and affidavits filed, that through inadvertence the scrivener placed the punctuation point before instead of after the last two naughts found in the verdict. Had it been placed after them instead of before, both statements of the amount would have corresponded, and this question would not have been here; but as it stands, it contradicts the remainder of the verdict and the affidavits, but if transposed the entire verdict becomes harmonious and in keeping with the record, as before stated. This view of the verdict was taken by the Court of Appeals in the case of Gurley v. O'Dwyer, 61 Mo. App. 348.

In that case the suit was on a promissory note for $103.70, and the jury returned the following verdict:

"We the jurors do find a verdict in favor of the plaintiff for $1.12, 16-100."

The court rendered judgment therein for the sum of $112.16. Thereupon the defendant moved the court to set aside the verdict and judgment, and enter judgment on the verdict for $1.12 and 16-100, according to the literal finding of the jury, which it was contended was a perfect verdict, for $1.12 16/100, and therefore, the court had no authority to change it to $112.16. In

passing upon that question, the St. Louis Court of Appeals said:

"Touching the second complaint, we see no reason why an inaccurate punctuation should destroy a verdict which is responsive to the issues, any more than inaccurate grammar or spelling, so long as the meaning of the verdict is perfectly clear in the light of surrounding circumstances. In State v. McNamara, 100 Mo. 100, the jury in their verdict assessed the defendant's punishment to two years in the 'pertentiary.' In Snyder v. United States, 112 U. S. 216, the jury made a still greater blunder in spelling. Both supreme courts held that the meaning was perfectly plain, and that the verdict was good. In the case at bar there was no pretense that anything was paid on the note. The only defense interposed was *non est factum*. As the verdict of the jury was for the note with interest, and, as that is the only verdict they could have rendered in conformity with the evidence, provided they found for the plaintiffs at all, the court did not err in entering the verdict according to the obvious intent of the jury, and rejecting the literal reading or erroneous punctuation. Besides this, we are bound to assume in support of the action of the court that the verdict was read to the jury, as is universally done, and that they assented to it as a verdict for $112.16. We have never heard of a jury going down to fractions of a cent in their calculation of damages. Section 2100 of the Revised Statutes of 1889 provides that errors not affecting substantial rights of the adverse parties shall be disregarded."

And we fully agree with the Court of Appeals in saying there is no reason why an inaccuracy in punctuation should destroy a verdict which is responsive to the issues, any more than inaccuracy in grammar or spelling, so long as the meaning of the verdict is perfectly clear in the light of the surrounding facts and circumstances. No one can read this verdict in the light of the facts and circumstances disclosed by this record and reach any other conclusion than that it was the intention of the jury to find, and that they did find, for the plaintiff in the sum of $6,500.

This point is ruled against defendants.

VI. It was finally insisted that the court properly

**Verdict.**
**Excessive** granted a new trial because the verdict was excessive.

We have carefully examined the evidence upon this point and are of the opinion that this insistence is not well grounded. Whilst it is true the evidence shows the deceased was fifty-seven years old, with one leg off six inches below the knee, and one arm was somewhat smaller than the other, yet it further shows that he supported himself and family, composed of his wife and eight children.

Under that evidence, we are unable to say the verdict was excessive.

We are, therefore, of the opinion that the judgment of the circuit court as to R. S. Hogan should be affirmed, and reversed and remanded as to J. E. Hogan, with direction for the court to reinstate the judgment on the verdict, as to him.

It is so ordered. All concur except *Bond, P. J.,* absent.