# OCTOBER, 1927

JOHN MEBAS, APPELLANT, v. EMIL WERKMEISTER, BY HIS GUARDIAN ET AL., AND SEVERIN WERKMEISTER, RESPONDENTS.*

St. Louis Court of Appeals. Opinion filed November 8, 1927.

174

*Corpus Juris-Cyc. References: Agency, 2CJ, p. 933, n. 13; p. 935, n. 27; Motor Vehicles, 42CJ, p. 1086, n. 30; p. 1250, n. 11; p. 1260, n. 12.

*Frank A. Habig* and *D'Arcy & Neun* for appellant.

*Geers & Geers* for respondents.

DAUES, P. J.—This is an action for damages for personal injuries growing out of an automobile accident. Plaintiff recovered a verdict for $6500, which verdict upon defendants' motion for a new trial was set aside. From such, plaintiff appeals to this court.

The announced grounds upon which the motion for new trial was sustained was that error was committed in giving Instructions 1, 2 and 3 on the part of plaintiff, and a failure to give Instruction 12 on behalf of defendants. This may be treated together as they raise but one question, and that is as to whether the case was properly submitted to the jury on the theory that there was sufficient evidence to the effect that the driver of the machine was acting in the interest of his father, the defendant Severin Werkmeister, to make the doctrine of *respondeat superior* applicable.

The petition alleges that the defendant Emil Werkmeister, while in the line of his duty, and in the discharge of his obedience and duty to his father, Severin Werkmeister, and while in the performance of the duty, business and commission owing to his father, negligently struck and seriously injured plaintiff. It is charged that defendant Emil Werkmeister while driving his father's automobile in the city of St. Louis on December 20, 1923, seriously injured plaintiff, and specifies as negligence: The failure to keep as near the right-hand side of the street as possible; failure to warn; failure to keep brakes in good condition; excessive speed, and relies also on the humanitarian doctrine. There are other assignments of negligence, none of which need here be discussed since no question arises about them.

The defendant Emil Werkmeister, a minor, filed an answer by Severin Werkmeister, his guardian *ad litem*, which is, first, a general denial, together with a plea of contributory negligence. Defendant Severin Werkmeister filed an answer in which he admits that he was the owner of the Ford automobile which caused the injury, and admits that his son Emil Werkmeister was driving and operating the automobile at the time of the accident, but denies that the son was employed or engaged in his, Severin Werkmeister's business, but that the son was operating the Ford automobile without this defendant's consent, or at his request, or under his direction, and then further alleges that the boy was engaged in his own private business at the time.

The reply is a general denial.

Since there is not and cannot be any question about the sufficiency of the evidence to submit the case to the jury as to Emil Werkmeister, the driver of the machine, we will recite only so much of the record as bears directly on the point before us for decision. That is, whether under this record the father is liable for the negligence of his seventeen-year-old son while driving the father's automobile to or from high school, on the theory that the son was then acting in the interest of his father and not on a journey of his own, disconnected with the interest of the father.

The evidence tends to show that plaintiff on the morning of December 20, 1923, was riding in the side seat of a motor cycle in St.

Louis county, near the limits of the city of St. Louis, on Gravois avenue; that when he arrived at that point and within the city limits, he and his companion got off of the motor cycle and started to cross Gravois avenue when defendant Emil Werkmeister ran over him with the automobile in question while driving same at from thirty to forty miles an hour; that defendant Emil Werkmeister did not slow down or stop or sound a signal, nor swerve the automobile in order to avoid striking plaintiff. It is in evidence that plaintiff after the injury was taken to the City Hospital in St. Louis, where he remained two weeks, and he was then removed to a private hospital, where he remained seven weeks longer. He suffered, among the injuries, a fracture of two bones in his left leg, the bones having protruded through the flesh of the leg, necessitating a surgical operation to set the leg. He remained home for a long period of time and was not able to work for one year after the accident. It was shown that his hospital and doctor expenses amounted to more than $1000; that he lost wages of upwards of $1700, and that the injury is permanent and that the injured leg will remain crooked and shorter than the other one. There is no question with reference to the extent of the injury.

Plaintiff's evidence supporting the allegations of negligence was denied by witnesses on the part of defendants, but a clear and strong case was made for the jury in that respect.

Now, as to the evidence relating to the question as to whether a case was made for the jury against the father, defendant Severin Werkmeister. We will refer to these defendants as father and son without repeating their full name.

Plaintiff introduced a deposition of the son in which he admitted that he was seventeen years of age the day before the accident; that he was living with his parents, both of whom were living; that his father was the owner of the automobile in question and that he, the son, was driving same when he struck plaintiff; that his father had owned the machine for about two years, and that on this day he was on his way to the Kendrick High School in the city of St. Louis, quite a distance from his home, he and his parents living in St. Louis county. He testified further that he used the automobile regularly in the summer, but not regularly during the winter months; that his father knew that he used the machine, and permitted him to use it, and, quoting the record, "that his father permitted him to use the automobile every day; that his father is a gardener at Affton, Missouri, and that during the summer time when he did not go to school he would help his father at his place; that his father never drives the automobile, that his father did not know how, and that witness did all of the driving, and that in going to and from school he drove the automobile himself; that if his folks wanted to go out and take a drive witness would do the driving,.

and that he acted as chauffeur for the family; that no one else in the family drove the automobile at all; that at the point where he struck plaintiff, the Cherokee line car comes around a little parkway there off of Gravois avenue. . . . That while on the way to school on that day, there was nothing else he was going to do that day." A question was then asked: "Just going to school and coming back," and the answer: "Coming home, yes, sir:" "that there was no reason for his getting home at a certain time; he always got home at the same time; that he helped his father in the evenings when he got home; that as soon as he got back home with the automobile he would help around the house; that he would help his father, but no special time he had to get home; he generally got home at four or four-thirty P. M." Witness testified "that his father supports and maintains him and takes care of him; that his father boards him and gives him a home and clothes and everything."

For the defendants, Emil Werkmeister testified at the trial that on this day the Ford sedan was kept in the garage at home, and that he took it just because it was raining; that he didn't ask for it; he didn't know his father knew he was using it; he guessed his father did know though as his father was at home and he guessed his father saw him drive away; that he took it because it was raining. He testified that his father boarded him, clothed him and educated him, and that he went to school in the Ford if raining, or at any time he felt he wanted to use the machine, and that his father of course knew all the time about that; that he was doing nothing else, but was there with his father and living at home with his parents; that he would go to school, but not merely because they wanted him to.

The defendant Severin Werkmeister, testifying on behalf of the defendants, said, in part, that he was not at home when Emil left with the automobile; that he didn't know Emil was going to use the automobile that day; that he never used it through the winter, but on that day he took it; that he didn't know Emil was going to take it; he wasn't around; that on that day he did not give Emil direct permission to use it; he couldn't remember doing it. Witness testified that Emil didn't use the automobile during the winter; only in the summer in good days, so that he could come back and help at home a little; that he was a gardener, and in the summer time Emil helped out in the garden, and that he didn't do any gardening in the winter.

When asked on cross-examination if he had any objection to Emil using the machine to go to school on a rainy day, this witness testified that he had no objection if Emil asked him; that Emil was the only one who did drive the car, and generally used the car in the summer time all the time.

No objection was made to the competency of the boy's testimony in this particular. However, as we understand the rule, it is that while agency cannot be proved by the declaration of the agent, it can however be proved by his testimony. Russell v. Wyant, 214 Mo. App. 377, 253 S. W. 790; 2 Corpus Juris 933, sec. 689, and undoubtedly so if a prima-facie case is made as to agency by other facts and circumstances in the case. As to whether a case was made for the jury against the father under the doctrine of *respondeat superior*, we have entertained serious doubt. The learned trial judge first concluded that it did, and subsequently, when the motion for new trial was presented, changed his mind and concluded that it did not.

There are many cases in Missouri with reference to this doctrine where father and son are involved and where the so-called doctrine of "family purpose" is discussed, but nowhere do we find this exact question presented as to whether the father is liable for the negligence of the son when the son is using the automobile in going to and from school under the direction of the father. We have paused before concluding that the doctrine does apply, and yet when the matter is maturely considered we cannot escape the view but that such is true.

Here there is evidence of an unemancipated minor living at home with his father, being maintained, clothed and supported by him; a minor who is also being educated by his father. The father is obliged to support the son and may receive his wages. This obligation and right are correlative; the latter grows out of the former. Under our compulsory education statute the duty is on the father not only to support and maintain his child, but he must educate his minor child under fourteen years of age. Such is the legal duty, yet the father may after the child reaches the age of fourteen years, carry out the further duty to the child to educate it in higher schools. And because the compulsory education law does not apply to this youth, who is over fourteen years of age, makes no material difference in this respect, we think. The parent, commendably, did undertake to educate this boy beyond that age; he lived at home with his father and worked for his father; the father educated him in accordance with public policy and to the general welfare of himself and son and society. It is in evidence that the son used the automobile in going to and from school, and there is some evidence that he did this in order to get home to help his father. It has been ruled, and we think soundly so, that the father would be liable for these educational costs as a necessity. [Esteb v. Esteb, 138 Wash. 174.] It is the policy of the State that a child should, when possible, receive a high school education, though it is not made compulsory.

· The case of Hayes v. Hogan, 273 Mo. 1, 200 S. W. 286 (in that case the son was an adult), and the many cases following, are not in

point because those are cases where a child (adult or minor) takes the father's automobile either with or without his consent and proceeds upon a purely pleasure trip of his own, or takes the automobile for an errand of the parent and proceeds away from such business of the parent and deviates elsewhere away from the directions under which he was to operate for the father. In those cases the father is not liable. In the instant case it certainly cannot be said that the travel to and from school is free from the business of the father. On the contrary, it was directly in the "business" of the father. It was one deemed necessary by the father, and being under the express, or certainly implied, demand of the father for him to continue his education. It was one which the father was under duty to provide, and in this case it was actually provided, though it was not compulsory for the father under the statute to do so.

So we are constrained to hold, after mature reflection, that the evidence is sufficient in this regard to submit the question of the father's liability, that is to say, whether the son was acting under the direction of the father, within the scope of the father's business, at the time this unfortunate accident happened. In other words, we think the court in the first instance correctly submitted to the jury the question as to whether or not the son was the agent of the father and acted in the scope of that agency. We have not lost sight of the fact that in Hayes v. Hogan, supra, the "family-purpose doctrine" is, impliedly at least, disapproved, yet the facts here do not come within that case and are not controlled by the principle there announced.

We have recently, in the case of Curtis v. Harrison, 253 S. W. 474, held that where a minor son, supported by his father, took the father's automobile to school but was told by his father on that day to take the automobile to school with him so he could come back home and take his mother to another destination, that liability attached. The evidence in the instant case, though not quite as strong as in the Harrison case, supra, is to similar import. The son testified that he took the automobile generally so as to return home in time to help about the father's business. The defendant Severin Werkmeister at first so testified, but this testimony afterwards is explained by defendant father that this was true in the summer time only. There is evidence from which the inference may be drawn that the father permitted the boy to take the machine to school on this day, and that the father continuously allowed him to take the machine to go to school, which was quite some distance from his home, and there is some evidence to the effect that this was done so the son could return in time to work around the place. In any event, it was undoubtedly done so that the boy could carry out the directions of his father to attend this school in the City of St. Louis, away from home, defendants living in St. Louis county.

We feel obliged to hold that the court erred in granting a new trial on the theory announced, and that the verdict of the jury should be reinstated. Accordingly, the judgment should be reversed and the cause remanded, with directions to the lower court to enter a judgment on the verdict as rendered, with interest from date of the judgment as originally entered. It is so ordered. *Becker* and *Nipper, JJ.*, concur.