GRACE GATES, Appellant, v. DR. NICHOLS' SANATORIUM, Corporation.
—55 S. W. (2d) 424.

Court en Banc, December 16, 1932.

*Sherman & Maugher* and *Mayer, Conkling & Sprague* for appellant.

*Booher & Woolverton, Randolph & Randolph* and *R. B. Bridgeman* for respondent.

WESTHUES, C.—This action was commenced, by plaintiff, in the Circuit Court of Andrew County to recover damages for injuries sustained as a result of alleged malpractice, while plaintiff was a patient in defendant's sanatorium in Savannah, Missouri. A change of venue was taken and the cause was tried in the Circuit Court of Holt County, resulting in a verdict for plaintiff in the amount of three thousand dollars ($3000). Defendant filed a motion for a new trial, which the court sustained, and plaintiff appealed.

The Kansas City Court of Appeals, to which court the appeal was properly taken, in an opinion by ARNOLD, J., reversed and remanded the case with instructions to the trial court to reinstate the verdict and enter judgment for plaintiff. Defendant filed a motion for rehearing, insisting that the trial court had sustained a motion for a new trial on the ground that the verdict was against the weight of the evidence. Only two of the judges of the Court of Appeals participated in the disposition of the case. They were unable to agree on the question and on rehearing the Hon. JOHN C. GROVER was selected as a special judge to sit with the judges in the disposition of the case. In an opinion by GROVER, Special Judge, in which BLAND, J., concurred, the order of the circuit court, granting a new trial, was affirmed on the theory that the trial court granted a new trial because the verdict was against the weight of the evidence. ARNOLD, J., filed a dissenting opinion, holding the majority opinion to be in conflict with an opinion of this court in the case of Crawford v. Stockyards Co., 215 Mo. 394, 114 S. W. 1057. The case was then transferred to this court.

If the order, granting a new trial, was based on the ground that the verdict was against the weight of the evidence, the action of the trial court must be sustained. [Riche v. City of St. Joseph, 326 Mo. 691, 32 S. W. (2d) 578; Littig v. Urbauer-Atwood Heating Co., 237 S. W. 782 (1), 292 Mo. 226.] We will, therefore, dispose of that question before considering the case on its merits. The motion for a new trial contained, among others, the following assignments of error:

"The court erred in refusing to give a peremptory instruction for defendant at the close of plaintiff's evidence.

"The court erred in refusing to give a peremptory instruction for the defendant at the close of all the evidence.

"The verdict of the jury was against the weight of the evidence, and against the entire weight and current of the testimony."

■■ The order of the trial court, sustaining the motion, recited that it was sustained on the ground "that under all the evidence the plaintiff is not entitled to recover." Plaintiff's assignment of error in the Court of Appeals reads as follows:

"The trial court erred in sustaining plaintiff's motion for new trial and in holding that under all the evidence, plaintiff did not make a case for the jury."

The meaning of the language, above quoted, found in the order of the trial court, sustaining the motion, is the subject for discussion. The theory of the majority opinion of the Court of Appeals can best be undertood by quoting the pertinent parts thereof, which read as follows:

"The plaintiff charges several grounds of negligence with respect to plaintiff's treatment and while at defendant's sanitorium. The evidence is conflicting, but after reading and carefully considering the evidence, we are of the opinion that plaintiff made a case for the jury. The trial court evidently was of this opinion as he overruled the demurrer at the close of plaintiff's case, and again at the conclusion of the testimony and submitted the case to the jury.

"The case of Carnie v. Toll, 281 S. W. 41, is decisive of the issues in this case. The court in speaking of the trial court's action in sustaining a motion for new trial, 'for the reason that the judgment rendered herein is without evidence to support the same,' says:"

The opinion then quotes copiously from the Carnie case and concludes as follows:

"In the case of Somerville v. Stockton, 178 Mo. 121, the words 'that the evidence is insufficient to support the verdict,' and in Van Liew v. Beverage Co., 144 Mo. 509, the words, 'the verdict was not sustained by the evidence,' are both held as sustaining the motions for new trial as against the weight of the evidence.

"Based upon these declarations, the fact that the burden is upon plaintiff to make her case by the greater weight of the evidence, and the proceedings at the trial, we hold that the language used in the order granting the new trial charges that the verdict of the jury was against the weight of the evidence."

The holding in Somerville v. Stockton, supra, is sound. To say that there is an insufficient amount of evidence implies that there is some evidence and, therefore, to say "that the evidence is insufficient to support the verdict" can be construed as meaning that there is some evidence but not enough in the light of the evidence to

the contrary to support the verdict. The same may be said of the Van Liew case, supra.

The opinion in Carnie v. Toll, supra, presents some difficulty. It seems to the writer that words must be interpolated into the order to hold the statement in the order "that the judgment rendered herein is without evidence to support the same" to mean that the verdict is against the weight of the evidence. This conclusion was reached, as will be disclosed by the opinion, by the process of elimination. In other words the opinion holds that the record contained substantial evidence to support the verdict; that the trial court rightly overruled the demurrer to plaintiff's evidence and also the demurrer at the close of all the evidence. The opinion lays much stress on this fact and then concludes that since the trial court had ruled on these questions, adversely to defendant, it must have intended to sustain the motion for a new trial on the ground that the verdict was against the weight of the evidence. To say "a verdict is without evidence to support it" can only mean that the verdict is not supported by any evidence. If there exists any evidence at all in support of the verdict, while it may be insufficient, it is not without evidence. If a verdict is without evidence there is nothing for the trial court to weigh and, therefore, it would be erroneous to say that the verdict was against the weight of the evidence.

However, in the case now before us the language used in the order, sustaining the motion for a new trial, permits, without doubt, of but one interpretation and that is that the trial court was of the opinion that it should have sustained a demurrer at the close of all the evidence. It is "horn book law" that if a plaintiff "under all the evidence is not entitled to recover," it is the duty of the trial court to sustain a demurrer and direct a verdict for defendant. The phrase, under discussion, is frequently used by lawyers in offering a demurrer at the close of all the evidence and has a well-known and definite meaning. Would any court hold that an assignment of error, by a defendant, "that under all the evidence plaintiff is not entitled to recover," had thereby raised the point before the trial court, that the verdict was against the weight of the evidence? The fact that the trial court had overruled the demurrer at the close of all the evidence should not be of much significance in determining the meaning of the wording of the order granting a new trial. The very purpose and function of a motion for a new trial is to call to the attention of the trial court the alleged errors, which occurred during the progress of the trial, and to give the trial court the opportunity in the first instance to correct its own errors. If a new trial is granted for the reason "that the verdict is against the weight of the evidence" it is not granted for any error committed during the trial. But this is a question presented to the trial court for the first time in the mo-

760

tion for a new trial. We desire to quote from Crawford v. Kansas City Stockyards Co., 215 Mo. 394, 114 S. W. l. c. 1059, what we think is appropriate to this case.

"When we reflect on the difference, as viewed from the standpoint of the appellate court, between saying on the one hand there was no evidence and on the other that the evidence was not sufficient in weight or credibility, we see how unjust it would be to a party, a verdict in whose favor had been set aside, if the ruling of the trial court had really been based on its opinion that there was no evidence, yet the ruling be sustained by the appellate court on the ground that it was based on evidence which the trial court reviewed and found deficient in weight or credibility. In that case, by a mere form of words, the appellant would be deprived of his right to have the appellate court pass on the question of whether or not there was any evidence. The assigning of a reason for sustaining a motion for a new trial is not a mere form, and a party should not be deprived of his right to have the appellate court review the ruling by the using of an incorrect form of expression. Here the court has said there was no evidence, and, that being its opinion, there was nothing to weigh and nothing weighed."

We close this discussion by saying that the order, granting a new trial in this case, under the plain terms and language used in the order, was based on the theory that the trial court should have sustained a demurrer at the close of all the evidence. The opinion in Carnie v. Toll, supra, on the point in question is hereby overruled.

■ If the record of the case discloses that any error was committed, by the trial court, of which defendant complains in his motion for a new trial, requiring a reversal of the case, even though not mentioned in the order granting a new trial, the action of the trial court must be sustained. [Johnson Grain Co. v. Chicago, B. & Q. Railroad Co., 164 S. W. 182.] We will proceed to an examination of the record and the defendant's assignment of errors.

■ Defendant insists that there is no evidence in the record to sustain a verdict for plaintiff. To get a fair understanding of the issues a short history of the case will be necessary. Plaintiff, a married woman, living in the city of St. Louis, Missouri, in the summer of 1925, discovered a small lump in her right breast. Becoming alarmed she consulted Dr. Sihler of Litchfield, Illinois, who did not treat plaintiff at that time. In November of the same year a friend advised her to go to the defendant sanatorium for treatment. Plaintiff entered the sanatorium. At that time she had developed two lumps in her right breast and one in the axilla under the right arm. The defendant sanatorium is devoted exclusively to the treatment of the disease commonly known as cancer. Its method of treatment consists of removing the cancerous tissue by escharotics. The medicine

contains a mixture of butter of antimony and zinc chloride. This mixture is applied to the flesh and kills all tissue, healthy as well as diseased. The dead flesh is removed by a surgical scissors and a curette. If a sufficient amount of flesh has not been removed by the first application further applications are made to insure the removal of all diseased tissues. The theory and practice of the treatment requires, as a matter of necessity, the removal of at least some healthy tissue.

When plaintiff entered the sanatorium her case was diagnosed as cancer and she received the usual treatment. Plaintiff's right breast was entirely removed, as well as a large part of the flesh under her right arm. After remaining in the sanatorium for about three weeks, plaintiff returned to her home in St. Louis. According to her testimony the mobility of her right arm, as a result of this treatment, was only slightly impaired. About fourteen months later, in February, 1927, plaintiff noticed another lump in the axilla, under her right arm, and wrote to the defendant sanatorium for advice. After receiving a reply, she returned to the sanatorium and was given a treatment similar to the first, by which much flesh was removed from under her arm and from her back. Plaintiff testified that the second operation and treatment rendered her right arm useless; that in the healing process the flesh webbed from her arm to her body, causing a drawing or pulling as far down as her hip. She also testified that this caused her much pain, loss in weight and many sleepless nights; that when she attempted to move her arm the scars would crack and bleed and this condition gradually became worse. She finally returned to Dr. Sihler for advice. Dr. Sihler advised her to return to the sanatorium for the purpose of having her condition remedied. Plaintiff returned to the sanatorium and, according to her testimony, was told nothing could be done for her. Plaintiff thereupon returned to Dr. Sihler, who performed, what is known to medical science, a Wolf graft operation. Plaintiff testified, and in this was corroborated by Dr. Sihler, that her condition was very much improved by this operation. While the use of plaintiff's arm was still somewhat impaired, she was able to dress herself and perform some household work, which she had not been able to perform previous to the operation by Dr. Sihler.

The petition charges in part as follows:

"That defendant, its agents, servants and employees undertook the care and treatment of plaintiff and plaintiff remained in said sanatorium taking a course of treatment and care prescribed by defendant and its agents, for a period of about three weeks, and that while there was submitted to surgical operations by defendant, its agents and servants, which said surgical operations and treatments were so negligently and unskillfully conducted in and about the

762

person of this plaintiff that, as a result of the negligence, carelessness, unskillfulness, neglect and lack of care and attention of defendant, its agents and servants, an extensive scar remained upon her right breast, underarm and back, which contracted to such an extent that plaintiff was unable to raise her right arm to a right angle with her body, and plaintiff was compelled to undergo a surgical operation to relieve said condition. . . .''

The plaintiff testified that a nurse at the sanatorium diagnosed her case, applied the medicine, removed the dead flesh and gave her all the treatments she received; that at no time did any doctor of the sanatorium examine or consult her with reference to the alleged cancerous condition. For the purpose of the demurrer we must consider plaintiff's evidence in its most favorable light to plaintiff. There is ample testimony in the record to support that part of the petition, above quoted. If Dr. Sihler and plaintiff are to be believed plaintiff was discharged from the sanatorium in a condition that practically rendered her an invalid for the balance of her life, and this condition could have been prevented or remedied at the sanatorium. According to the testimony, it was remedied to a great extent by the latter operation. This charge of negligence and the testimony in support thereof is sufficient to support the verdict of the jury and the amount of damages assessed. There was also substantial testimony in the record that the diagnosis and the treatment defendant employed had been condemned by the medical profession. There is also in the record testimony in support of other allegations of negligence in the petition. It is unnecessary to consider these at length. We hold that, under the evidence in this case, the trial court properly submitted the case to the jury.

Defendant complains of a number of instructions given on plaintiff's behalf and also assigns as error the refusal of the trial court to give certain instructions offered by defendant. The refused instructions, offered by defendant, are in the main instructions in the nature of a demurrer to the evidence. For example, Instruction G.

''Instruction 'G.'

''The jury are instructed that if they believe and find from the evidence that plaintiff was afflicted with cancer at the time operation was performed in February, 1927, then the verdict of the jury must be for the defendant without regard to any other facts or circumstances in the case.

'' (Refused.)''

This instruction tells the jury to find for defendant if they believe plaintiff was afflicted with cancer. The vice of this instruction is obvious. It entirely ignores the other allegations of negligence and the evidence in support thereof. Herein lies the fallacy of the major

portion of defendant's argument. Defendant takes the position that plaintiff's whole case must be sustained or fail on the question of whether plaintiff in fact was afflicted with cancer. We may assume, for the purpose of this case, that plaintiff in fact suffered with cancer and defendant correctly diagnosed it as such. However, as outlined above, the petition charges and the proof sustains acts of negligence, with reference to the treatment of plaintiff by defendant, that amply support the verdict.

The trial court gave a number of defendant's instructions, which fully protected defendant's rights and permitted the jury to consider only those damages, if any, plaintiff has sustained as a result of defendant's alleged negligent treatment of plaintiff, if any, in February or March, 1927. Plaintiff's instructions fairly submitted the case to the jury on plaintiff's theory. The evidence was sufficient to support the finding of the jury. We find no error in the instructions. Defendant is, therefore, bound by the verdict. [Cazzell v. Schofield, 319 Mo. 1169, 8 S. W. (2d) l. c. 587, 588 (3).]

■ Defendant complains in its motion for a new trial of the trial court's ruling in excluding evidence, offered by defendant, of medical experts that in their opinion no more flesh was removed from plaintiff than was necessary, under the treatment, to properly remove the diseased condition. The trial court ruled that defendant would be permitted to show what was actually done but that the opinion of the witness of whether or not more flesh was removed than necessary, was a mere conclusion and invaded the province of the jury. This was one of the disputed questions in the case. According to defendant's theory of the treatment of curing cancer, it was necessary to remove at least a portion of healthy flesh or tissue to insure a cure.

This point must be ruled against respondent for the reason that the only expert witness who qualified as an expert in the case for defendant, testified fully upon this subject. Note the following testimoney of Dr. Earl Metheny:

"Q. Doctor, while they are getting these pictures, I want to ask you another question: In the removal of this cancerous lump from under Mrs. Gates' arm, did you remove any more tissue than was necessary? A. In removing cancers we do not draw a sharp line of demarcation. We also go into a margin of healthy tissue.

"Q. I mean, did you remove more than was necessary, was my question? A. Oh, no. .

"Q. Now, I am speaking now on the question, I have just asked you, in 1927, when you examined this lump and saw to the removal of it, as to whether or not at that time any more flesh was taken out than was necessary? A. No, sir.

Q. Now, were there any muscles, or nerves or tendons taken out? A. No, sir.

"Q. I will ask you this, if at the present time, Mrs. Gates can raise her arm up this way would that indicate the presence of all of the muscles and nerves? A. It would."

Defendant offered similar testimony by a witness named Ina Bunce. This witness was a nurse who had had many years of experience in defendant's hospital. The trial court sustained plaintiff's objection to this testimony. The witness was not qualified under the evidence as an expert on this question. The witness testified that she did not treat or attempt to treat patients. Therefore, the testimony was properly excluded. [22 C. J. 677.] The evidence being properly excluded, the trial court's ruling must be sustained even though based upon another ground.

The order and judgment of the trial court, sustaining a new trial, is reversed and the cause remanded with instructions to the trial court to reinstate the verdict of the jury and enter judgment thereon for plaintiff.

The divisional opinion of WESTHUES, C., is modified, and the opinion as modified is adopted as the opinion of the court en banc, all of the judges concurring.