JENNY ARNOLD, Appellant, v. G. D. HASKINS, SR., and G. D. HASKINS, JR.—147 S. W. (2d) 469.

Division Two, February 1, 1941.

*Robert A. Dempster* and *W. P. Wilkerson* for appellant.

322

*Creal Black* and *C. A. Powell* for respondents.

COOLEY, C.—Appellant, plaintiff below, sued to recover for the death of her husband, Leo Arnold, who was killed in an automobile accident. There were four defendants named, G. D. Haskins, Sr., G. D. Haskins, Jr., Thad Campbell and Pat Sherwood. Plaintiff recovered a verdict for $10,000 against all of the defendants. Haskins, Sr., and Haskins, Jr., filed motion for new trial, which was by the court sustained and from the order sustaining said motion the plaintiff appealed. It does not appear that Campbell or Sherwood filed motions for new trial. At least, so far as appears from the record before us, they seem to have abided the verdict and do not appear as respondents here, the respondents being the two Haskinses.

G. D. Haskins, Sr., and G. D. Haskins, Jr., father and son, lived at Malden, Missouri, and were engaged, as partners, in the cotton ginning business. They had cotton gins at Malden and Vanduser, Missouri, and in the course of their business sold cotton seed, one of their customers being the Missouri Cotton Oil Mill at Cairo, Illinois. Defendant Sherwood owned some trucks which he used in general hauling for hire for various people. On occasion he hauled cotton seed from respondents' gins to the Cotton Oil Mill at Cairo, whether as employee

and agent of respondents or as independent contractor or in some other capacity being a disputed question. Defendant Campbell was a brother-in-law of Sherwood and the two would at times aid each other, as matter of accommondation, when either had trucking difficulties. Campbell was not employed by the Haskinses nor personally acquainted with either of them.

The accident herein involved occurred on December 29, 1937, five or six miles north of Sikeston, Missouri, on U. S. Highway No. 61, at about three o'clock A. M. It was then quite dark and visibility was poor. On the evening of December 28th, Sherwood, in a truck owned by Campbell, called at respondents' Vanduser gin to get a load of cotton seed to deliver to the Cairo mill. He loaded the truck and started to Cairo. At the point where the accident occurred the truck, in some way, was overturned in a road ditch along the side of the highway (No. 61). No portion of the truck or its cargo was left upon the slab or traveled portion of the highway. Sherwood left the overturned truck and its load, went to Sikeston and called a neighbor of Campbell's, requesting him to ask Campbell to bring another truck, owned by Sherwood, to the scene of the accident. That truck had printed upon it a sign "Haskins Gin Co.," although it in fact belonged to Sherwood. Campbell received and responded to Sherwood's call. When he arrived at the place where the truck had been overturned he did not find Sherwood there. The latter, it seems, had gone back to Sikeston to look for Campbell or to get assistance. Campbell, not finding Sherwood there, decided to go back to Sikeston to find Sherwood. While attempting to turn around on the highway the automobile, in which plaintiff's husband was riding as a guest, approached and collided with the truck and trailer which Campbell was driving. Deceased received injuries from which he died. From Campbell's testimony, introduced by plaintiff although Campbell was a defendant—it appears that while he was in the act of turning and while the trailer portion of his outfit was on the right side of the black center line of the pavement and the tractor portion was up to or slightly over the black center line of the pavement, it " 'bucked up and down' and stopped;" that he made unavailing efforts to start it, and, seeing the lights of an approaching automobile (in which deceased was riding) made efforts to warn and to stop that car, finally jumping out of its way to save himself when no attention was paid to his signals; and that said approaching car "skidded" against and struck the stalled truck.

Campbell took the wounded man to a doctor's office and later found Sherwood and told him of the accident. Sometime later in the day Sherwood, with help hired by him—not including Campbell—righted the overturned truck, reloaded the spilled cotton seed, and proceeded to deliver it to the mill at Cairo, in the truck in which it had originally started—not the truck involved in the fatal accident.

The overturned truck did not belong to either Haskins, Sr., or Haskins, Jr.—or to the partnership. It belonged to Campbell. Although the truck that stalled across the highway and with which the car in which deceased was riding collided had printed on it "Haskins Gin Co.," neither of the Haskinses had caused such lettering to be done or knew it was there or how it came to be there. They did not do business under the name "Haskins Gin Co.," but under the name "Lake County Gin Company." Seemingly Sherwood, who owned that truck, had had that printing done of his own volition.

The facts we have summarized are taken from the evidence introduced by plaintiff. She had taken and she introduced depositions of defendants Haskins, Sr., Haskins, Jr., and Sherwood, and she called defendant Campbell as her witness. The defendants introduced no evidence but stood upon demurrers to plaintiff's evidence, which the court overruled.

■ Respondents' motion for new trial raised several questions. One was alleged misconduct of one of plaintiff's attorneys. The court heard evidence on that question and specifically found against respondents and in plaintiff's favor on that point, so she cannot be said to be aggrieved by that part of the court's ruling. The court sustained the motion for new trial on the stated ground that "the court . . . finds that the evidence is insufficient to fix liability as respects defendants G. D. Haskins and G. D. Haskins, Jr., and the motion for a new trial of said defendants G. D. Haskins and G. D. Haskins, Jr., is ordered by the court sustained."

■ In Gates v. Dr. Nichols' Sanatorium (En Banc), 331 Mo. 754, 55 S. W. (2d) 424, a case certified to this court by the Kansas City Court of Appeals, a new trial had been granted by the trial court on the stated ground "that under all the evidence the plaintiff is not entitled to recover." The judges of the Court of Appeals had differed as to whether the trial court's order meant there was *no* evidence to support the verdict and that a peremptory instruction to find for the defendant should have been given or whether it meant that, in the opinion of the trial court, the verdict was against the weight of the evidence, in which latter event the order granting the new trial would be sustained. We held that the language used by the trial court meant that in said court's opinion there was *no* evidence to justify submission of the case to the jury and that said court had granted the new trial because it was of opinion it should have directed a verdict for the defendant—a conclusion with which this court did not agree. But in the Gates case we referred to two prior decisions of this court, which had been discussed by the Court of Appeals, viz., Somerville v. Stockton, 178 Mo. 121, 77 S. W. 298, and Van Liew v. Barrett & Barrett Beverage Co., 144 Mo. 509, 46 S. W. 202. We quoted from the Court of Appeals' opinion (see 55 S. W. (2d) 1. c. 425):

" 'In the case of Somerville v. Stockton, 178 Mo. 121, 77 S. W. 298, the words, "that the evidence is insufficient to support the verdict," and in Van Liew v. Beverage Co., 144 Mo. 509, 46 S. W. 202, 204, the words, "the verdict was not sustained by the evidence," are both held as sustaining the motions for new trial as against the weight of the evidence.' "

We then said,

"The holding in Somerville v. Stockton, supra, is sound. To say that there is an insufficient amount of evidence implies that there is some evidence, and therefore to say 'that the evidence is insufficient to support the verdict' can be construed as meaning that there is some evidence, but not enough in the light of the evidence, to the contrary to support the verdict. The same may be said of the Van Liew case, supra."

We further pointed out the distinction between saying "a verdict is without evidence to support it" and saying that the evidence is insufficient. We said,

"To say 'a verdict is without evidence to support it' can only mean that the verdict is not supported by any evidence. If there exists any evidence at all in support of the verdict, while it may be insufficient, it is not without evidence. If a verdict is without evidence, there is nothing for the trial court to weigh, and therefore it would be erroneous to say that the verdict was against the weight of the evidence."

The question now under consideration was fully discussed and we think soundly ruled in the Gates case. And while at first blush it might seem that the distinction drawn is close, yet there is a distinction, as there pointed out. To say there is *no* evidence is one thing, to say the evidence, in the opinion of the trial court, is insufficient, is another thing. The latter expression may mean that, while there was some evidence its weight was insufficient in the opinion of the court—a question upon which the trial court may rule in passing upon a motion for new trial. In the case before us, even if plaintiff made a submissible case as to respondents, there was ample evidence to warrant a finding that they had nothing to do with the fatal accident and no responsibility for it. Campbell, driver of the stalled truck which blocked the highway when the car in which deceased was riding collided with it, was not respondents' employee. He had not been sent there by them and they did not know he was going there. There is no evidence in the record that Sherwood, even if he was respondents' employee—a disputed question—was authorized to call Campbell so as to make him respondents' servant. The truck which Sherwood had overturned was not blocking the highway, not interfering with or threatening traffic—it was in the ditch off the highway; there was no evidence that its overturned load of seed was threatened with destruction—in short no evidence of any sudden

emergency that would seem to have required Sherwood, as respondents' servant, if he was such, to requisition Campbell as a servant of respondents.

Appellant seems to rely largely on the proposition that she made a prima facie case, which could not be taken from the jury, by proof that the name "Haskins Gin Company" was printed on the truck driven by Campbell, and that though the Haskinses did not do business under that name but under the name of "Lake County Gin Company," there were no other persons named Haskins in the ginning business in that part of the country. Her proof did tend to show that respondents were the only persons named Haskins engaged in the ginning business in that locality. She further contends, in this connection, that having made such prima facie case, it was a question solely for the jury to say whether or not the truck involved in the collision belonged to respondents and was being operated at the time by Campbell as respondents' servant, acting within the scope of his employment. She cites, among others, cases like Fleishman v. Polar Wave Ice and Fuel Company, 148 Mo. App. 117, 127 S. W. 660, wherein it was held that such insignia printed on the defendant's vehicle, absent any countervailing evidence, was sufficient to take such questions to the jury. But appellant's argument overlooks one or two facts. In the recent case of Ross v. St. Louis Dairy Co. et al., 339 Mo. 982, 98 S. W. (2d) 717, we had occasion to review this question. We there held that the "presumption," if it may be so called, arising alone from the mere fact of a name being printed on a vehicle involved in an accident, disappeared upon proof of the facts and the question then became one of fact, to be determined upon the evidence. In that case the countervailing evidence came in from the defendant's side. In the instant case plaintiff herself presented the factual evidence, so, clearly, she cannot rely on the mere alleged presumption. It became a question of fact and as we have endeavored to point out the trial court evidently considered the evidence insufficient to establish the fact—not that there was *no* evidence tending to establish it but rather that it was insufficient in weight. We think the court's order sustaining the motion for new trial should be affirmed and the cause remanded. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.