CHELSEA FOSTER, a Minor by J. E. FOSTER, Next Friend, Appellant, v. ALFRED CAMPBELL.—No. 39548.—196 S. W. (2d) 147.

Division Two, September 9, 1946.

350

*Esco V. Kell* and *G. W. Rogers* for appellant.

*Green & Green* and *Wm. D. Roberts* for respondent.

BARRETT, C.—On the 29th day of June 1943 the plaintiff, Chelsea Foster, was injured when the motorcycle he and another boy were riding was involved in a collision with a Plymouth pick-up truck driven by Iona Campbell. The collision occurred on Highway 63, three miles south of West Plains, as Mrs. Campbell was returning to her home in Howell Valley. The boys were traveling from Mammoth Springs, Arkansas, to West Plains. Chelsea claimed that the collision and his resulting injuries were due to the negligent manner in which Mrs. Campbell drove the pick-up truck. Consequently, he instituted this action for $10,000.00 damages for his injuries against Mrs. Campbell and her husband, Alfred Campbell, as well upon the allgeation "That Iona Campbell is the wife of defendant, Alfred Campbell, and was at all times hereinafter mentioned, the agent, servant and employee of defendant Alfred Campbell, acting in the course and within the scope of her employment and in the performance of her duties as such servant and agent." At the' close of the plaintiff's evidence the trial court sustained a separate motion for a directed verdict as to Alfred Campbell upon the ground, apparently, that there was not sufficient competent evidence from which the jury could or should be permitted to find that Mrs. Campbell was the agent of her husband in driving the pick-up truck at the time of the collision. The jury found for Mrs. Campbell and Chelsea appeals from the court's judgment in favor of the husband, Alfred Campbell.

The sole question briefed and argued upon this appeal is whether the court was in error in directing a verdict for the husband. The plaintiff claims that under all the evidence he was entitled to have the husband's liability submitted to the jury because the jury could reasonably find his wife's agency from all the facts and circumstances. He contends, in any event, that he was entitled to have his cause submitted upon the mere proof of the husband's ownership of the

pick-up truck at the time of the collision. The defendant contends that the court properly directed a verdict because (a) at the time complained of the wife was an independent contractor, (b) that if there was ever a presumption of agency arising from the mere fact of the husband's ownership of the pick-up, the presumption was destroyed by the evidence which the plaintiff introduced and (c) that the evidence failed to show that Mrs. Campbell was her husband's agent in driving the pick-up because it did not show that she was engaged upon his business or that she was subject to his control.

The plaintiff proved by a filling station attendant that on June 29th, 1943 Mrs. Campbell came to the Redwine Oil Company and purchased fifty-five gallons of gasoline which she charged to her husband and that subsequently Mr. Campbell paid the account. Then he called Mrs. Campbell who testified that she was Alfred's wife and that he owned the pick-up which she was driving at the time of the collision. She said that she and her husband were farmers and that separately from the general business of farming she handled the poultry and eggs. She testified that the purpose of her trip to West Plains on the 29th day of June was to sell her poultry and eggs and to buy some chicken feed, all of which she did "on (her) own business." On that day the husband was "working in the harvest" and the following is her more detailed account of all the circumstances of her use of the pick-up truck:

"A. Well, I asked him for the pick-up to come to town, to take off my produce.

"Q. What produce did you bring? A. Chickens and eggs.

"Q. When you asked about that state whether or not he said anything about taking the men over to the field where they were working?

"A. Well, I asked him that morning, at the breakfast table, when he was coming to town; he said 'I don't know; I am very busy.' I said if I could get it I could bring the produce off myself; and he said 'I will let you know at noon about it.' So when he came in for dinner I said 'can I have the pick-up this evening to take off my cream and eggs—the eggs should be taken off,' it was warm weather—very hot, and I had 70 odd dozen of eggs, and I don't recall whether one or two coops of chickens I had on hand. He said 'if you will take us back to the field after noon you can have the pick-up.' And that's what I did.

"Q. And you did take them back to the field after noon? A. Yes, sir.

"Q. Then, after you took them back to the field, you came back and loaded up and came to West Plains, is that right? A. Yes, sir.

"Q. After you got to West Plains I presume you sold the produce you brought to town? A. Yes, at the Farmers' Exchange.

"Q. And collected the money for that? A. Yes, sir.

"Q. Then did you do some trading here? A. I bought some chicken feed I believe.

"Q. What did you do for your husband? A. When I took him back to the field he filled his tractor from the barrel that was in the truck, and he remarked to me: 'drive up to the Redwine Station and tell Charles Phelps to fill this barrel of gasoline; and that's what I did.

"Q. And you had the barrel filled with gasoline? A. Like he told me to.

"Q. And you were taking that back to your farm when you had the collision? A. It was in the pick-up.

"Q. And you were on the way back to the farm at the time you had the wreck, is that right? A. I was on my way home. . . .

"Q. Now this gasoline you bought here and took back to the farm, what did you use that for ordinarily? A. He used it for the tractor.

"Q. To operate a tractor there on the farm? A. Why, yes."

Legal liability may not be imposed upon Mr. Campbell for his wife's negligence in driving the pick-up merely by reason of their relationship. 5 Am. Jur., Sec. 362; 42 C. J., Sec. 849. And furthermore we may assume, for the purposes of this opinion, that had the evidence conclusively shown that Mrs. Campbell was not in any manner engaged upon her husband's business but in point of fact was solely engaged upon an enterprise of her own—such as taking her mother and sister for a ride or going after cherries for a hired hand—that Mr. Campbell would not then be legally responsible for her negligent driving. Mast v. Hirsh, 199 Mo. App. 1, 4, 202 S. W. 275, 276; Norton v. Hines, 211 Mo. App. 438, 440, 245 S. W. 346, 348; Drake v. Rowan, 216 Mo. App. 663, 669, 272 S. W. 101, 103. We assume that there is no liability upon the husband in this case "unless the wife was using the automobile as the agent or servant of her husband, or in furtherance of plaintiff's (his) business." Norton v. Hines, supra. And, in this connection, whether she was his agent or engaged upon his business is to be determined "upon the same considerations which control the creation and existence of the relation between other persons." 1 Mechem, Agency, Sec. 167. Under this view it is not necessary for us to determine whether Chelsea was entitled to have the husband's liability submitted upon the mere fact of the nature of the vehicle and the husband's ownership of it. Compare: State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S. W. (2d) 1164; Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361; Hays v. Hogan, 273 Mo. 1, 200 S. W. 286; and Edwards v. Rubin, 221 Mo. App. 246, 2 S. W. (2d) 205; McCarter v. Burger (Mo. App.), 6 S. W. (2d) 979; Hampe v. Versen, 224 Mo. App. 1144, 32 S. W. (2d) 793; Benson v. Smith (Mo. App.), 38 S. W. (2d) 743 and see the annotations in 42 A. L. R. 898; 74 A. L. R. 951; 96 A. L. R. 634.

In this case there is the further uncontradicted circumstance that Mr. Campbell not only gave Mrs. Campbell permission to use the pick-up for her own purposes of marketing her separate produce and buying chicken feed but that he also instructed her to go by the filling station and have Phelps fill the fifty-five gallon drum with gasoline which she did, "Like he told me." The gasoline was for use in the tractor and about the general business of farming. It may not be said then that the evidence shows as a matter of law that the trip to West Plains was solely upon the wife's separate business. If the trip was for the mixed or double purpose of her business and the business of her husband as well, and there was no material deviation from those purposes, it may not be said that she was not engaged upon her husband's business when she was returning home, after having sold her produce and purchased feed, with the gasoline which she had procured at his request. 42 C. J., Sec. 867, p. 1107; Tutie v. Kennedy (Mo. App.), 272 S. W. 117, 123; Cable v. Johnson (Mo. App.), 63 S. W. (2d) 433, 435. "An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person. . . . The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." 1 Restatement, Agency, Sec. 236 and comment pp. 530-531.

The case is not distinguishable on principle from Murphy v. Loeffler, 327 Mo. 1244, 39 S. W. (2d) 550, where the family had been engaged in a wedding ceremony and the father permitted the son to take a bridesmaid home but instructed him to return for the purpose of taking the family home. The son was involved in a collision on the return trip and it was held that "it was for the jury to determine in this case whether, at the time and place of the accident, Loeffler, Jr., was in the performance of a duty imposed by Loeffler, Sr., . . ." And, in Malone v. Small (Mo. App.), 291 S. W. 163, the husband and wife were interested in a food show given by a fraternal order. The husband directed the wife to take two of the guests home in one of their cars. In a suit by one of the guests the court said: "Harry G. Clymer being interested with his wife in the success of the undertaking, and owning the machine which she operated, we think the evidence was sufficient from which the jury may well have found that Mrs. Clymer was acting as her husband's agent in the transaction and at his suggestion, and therefore he would be jointly liable with her under such circumstances." In any event, considering all the circumstances, the nature of the vehicle and its use, the purpose of the whole trip and the fact that Mr. Campbell directed his wife to get the gasoline, it may not be said that the undisputed evidence destroyed all the inferences the jury could reasonably draw in favor of the plaintiff as to the wife's agency and the trial court, therefore, was in error in directing a verdict for Alfred Campbell. State ex rel.

Waters v. Hostetter, 344 Mo. 1. c. 448, 126 S. W. (2d) 1. c. 1166; Murphy v. Loeffler, supra; Mebas v. Werkmeister, 221 Mo. App. 173, 299 S. W. 601; Curtis v. Harrison (Mo. App.), 253 S. W. 474; annotation 66 A. L. R. 1532. Compare: Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854; Hays v. Hogan, supra and Arnold v. Haskins, 347 Mo. 320, 147 S. W. (2d) 469.

Control or lack of control by the alleged employer may be decisive of whether the relationship is in fact that of master and servant or that of independent contractor. Becker v. Donahue (Mo. App.), 168 S. W. (2d) 960, 963-964. But in this case there is not the slightest foundation for the claim that Mrs. Campbell was an independent contractor for ''An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'' 1 Restatement, Agency, Sec. 2(3). It was specifically pointed out in Ross v. St. Louis Dairy Co., 339 Mo. 982, 994, 98 S. W. (2d) 717, 723, upon which the respondent relies, that there was a written contract and that it met all the requirements of ''one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work.'' Neither is the case comparable to the instance of the salesman who, the evidence showed, ''was not in the territory for any business purpose'' even though his purely personal trip may have served the ''double purpose'' of putting him in proximity to the place he intended to resume work (from which he had materially deviated) thirty-six hours later and yet permit his social trip with his wife. Klotsch v. Collier & Son Corp., 349 Mo. 40, 47-48, 159 S. W. (2d) 589, 594.

In conclusion it should be noted that we have accepted this appeal upon the basis upon which it has been presented. The agreed record and transcript as well as the briefs and arguments are concerned solely with the judgment entered in favor of the husband upon the separate verdict directed in his favor. It does not appear from this record what judgment, if any, was entered upon the jury's verdict (''We, the jurors find the defendant and plaintiff equally at fa(u)lt in this case'') regarding the wife's liability. Hence we are not concerned upon this appeal with the problem of whether the jury's verdict exonerated the wife and thereby of necessity exonerated the husband as a principal as well. McGinnis v. Chicago, R. I. & P. Ry. Co., 200 Mo. 347, 98 S. W. 590; Atterbury v. Temple Stephens, 353 Mo. 5, 181 S. W. (2d) 659. Neither are we concerned, in these circumstances, with the problem of whether the liability of the husband and wife is so dependent that a new trial or some judgment may not be entered as to the wife, even though there is no appeal by the plaintiff from any judgment concerning her. See and compare: 5

C. J. S., Secs. 1933, 1951; Wollman v. Loewen, 108 Mo. App. 581, 84 S. W. 166; Civil Code of Mo., Sec. 140(c) and Hardwick v. Kansas City Gas Co., 355 Mo. 100, 195 S. W. (2d) 504.

Because, upon the record presented, the court erroneously directed a verdict in favor of Alfred Campbell the judgment as to him is reversed and the cause remanded. *Westhues, C.,* concurs; *Bohling, C.,* dubitante on result.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Tipton, J.,* and *Ellison, P. J.,* concur; *Leedy, J.,* doubtful.