Pearl A. BROWN, Appellant-Plaintiff,

v.

KANSAS CITY, Missouri, Respondent-Defendant.

No. 22690.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

Rex Parr, Kansas City, for appellant.

Benjamin M. Powers and Thomas J. Conway, Jr., Kansas City, for respondent.

CAVE, Judge.

Plaintiff's petition alleged personal injuries resulting from a fall on the sidewalk. Trial to a jury resulted in a verdict in favor of the plaintiff in the amount of $5,000. Defendant filed motion for new trial which was sustained because of error in plaintiff's damage instruction, which authorized a recovery for *permanent* injuries. Plaintiff perfected her appeal and seeks to have the judgment reinstated. This court has jurisdiction. Secs. 3 and 13, Article V of the Constitution, V.A.M.S., and Sec. 477.040 RSMo 1949, V.A.M.S.

The only issue presented on appeal is whether the court error in sustaining the motion on the assigned ground.

Plaintiff testified that on the afternoon of June 7, 1950, she was walking along the sidewalk and stepped in a hole and fell to the pavement, injuring her left ankle and her left hand, wrist and arm. A bystander called a taxicab which took her to the office of Dr. Oglevie. She said he took two or three X-rays, but gave no treatment. He did not testify and the X-rays were not in evidence. She left Dr. Oglevie's office and went to see Dr. K. P. Jones. He suggested that she go to Research Hospital for emergency treatment. She did so, and Dr. Vilmer took X-rays and bandaged her ankle, and put her left hand in a cast. Dr. Vilmer did not testify, nor were his X-rays or the hospital records introduced. The only evidence relative to her injuries comes from plaintiff.

This accident occurred on June 7, 1950, but the case was not tried until January 21, 1957, almost six and a half years after the fall.

With reference to the ankle, plaintiff testified it was "just sprained * * * never was in cast * * * just bound"; and at the trial she said, "My ankle is all right". She also stated that her left wrist and thumb were broken and that Dr. Vilmer placed them in a cast and a pin in the thumb. She wore the cast and pin about two months. In describing the pin, she said it "extended out, I should judge, about four inches". Evidently this was a brace of some kind, and not the usual "pin" used in some fractures.

Prior to her injury, plaintiff had worked as an extra at the telephone switchboard at the Commonwealth and Dixon Hotels, just relieving other girls when they would be off for a day or two, or on a vacation; and also did some typing at the Commonwealth. She had been averaging about $25 a week. She gave up the typing because "I can't type with any speed * * * it gets stiff on me." Presumably she means the hand. She did return to her work as an extra telephone operator and made $10 or $15 a week, dependent on the number of operators who wanted off; and she has also engaged in sewing and repair work. At the time of the trial, she said her hand and thumb would still get stiff at times, were weak, and she couldn't pick up anything that was heavy. "Dr. Vilmer gave me hot oil treatments" for a time; and "then I went to the whirlpool baths out at the Rehabilitation and still go there". She had not visited Dr. Vilmer or any other physician for two or three years prior to the trial.

Defendant introduced the employment records of the Dixon Hotel for the years of 1949–50 and 51. These records disclose that the plaintiff had earned $893.83 in 1949; $854.38 in 1950; and up to June 20, 1951, her

earnings were $426.14. Her employment was terminated at that hotel on June 20th, but it was not due to any physical disability. Plaintiff admitted these amounts were substantially correct. Thus it appears that she earned, on an average, substantially the same amount at the Dixon Hotel after the accident as she had prior thereto.

It is the settled law that a trial court has a wide discretion in passing on a motion for new trial, and where such a motion is sustained, the appellate court will be liberal in upholding the trial court's action. However, this discretion is limited to questions of fact and matters affecting the determination of issues of fact. De Maire v. Thompson, 359 Mo. 457, 222 S.W.2d 93; Gedville v. Mahacek, Mo.App., 231 S.W. 2d 305. It is also true that an appellate court will be more liberal in sustaining an order granting a new trial than it might be in reversing a judgment on the same ground on appeal. Tennison v. St. Louis-San Francisco Ry. Co., Mo., 228 S.W.2d 718; and Warren v. Kansas City, Mo., 258 S.W. 2d 681. In the instant case, the trial court was passing upon the sufficiency of the evidence to support the submission of *permanent injuries*; thus it was a factual issue, and we must determine whether its discretion was abused.

The question of the sufficiency of evidence to support an instruction for *permanent* injury is fully discussed by the court en banc in Weiner v. St. Louis Public Service Co., Mo., 87 S.W.2d 191, 192, wherein it is said: " 'To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury. To say of a thing it is permanent means that it will continue regardless of a contingency or fortuitous circumstance.' * * * Proof of a condition which may cause future trouble is not necessarily proof of a permanent injury, the former may persist after the trial, but not continue to exist permanently while the latter is a physical or mental impairment or disability which will last throughout life, and there is a distinction between damages which may reasonably result in the future and damages allowable as for a permanent injury. * * * To recover damages for permanent injury the permanency of the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor."

In State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S. W.2d 428, 431, it is said: "It is not common knowledge that fractures of bones * * * are permanent injuries. In some such cases the injuries are of a nature that the medical experts consider the condition permanent. * * * In other cases of that nature the doctors do not consider the injuries permanent. * * * So we conclude that as a general rule fractures of bones * * * are not injuries that may be considered permanent absent substantial evidence to that effect". These same general rules and standards have been followed in many cases. See Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173; Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328; Hoffman v. Illinois Terminal R. Co., Mo.App., 274 S.W.2d 591; Berry v. McDaniel, Mo.App., 269 S.W.2d 666.

In several of the cases just cited, the appellate court held, as a matter of law, that the evidence was not sufficient to submit the issue of permanent injuries, and reversed and remanded the cause even though the trial court had overruled the motion for new trial. We are not required to go that far in the instant case. The question is, did the trial court abuse its discretion in sustaining the motion? We think not.

Plaintiff argues that it is not necessary to produce medical testimony to authorize a submission of permanent injuries. That is true. Clark v. Mississippi River & B. T. Ry., 324 Mo. 406, 23 S.W.2d 174, 179; State ex rel. Kansas City Public Service Co. v.

Shain, supra. We can visualize a situation where the injuries themselves are of such a nature as to make their permanency apparent to a person of ordinary intelligence, but the trial court found that this was not such a case, and with that we agree.

Plaintiff cites Burns v. Polar Wave Ice and Fuel Co., Mo.App., 187 S.W. 145, an opinion by the St. Louis Court of Appeals. There is language in that opinion which lends support to plaintiff's contention. It holds in effect that where a plaintiff testifies at the time of the trial that he is still suffering from conditions resulting from the accident, this would justify submission of the question of permanent injuries. That case was decided in 1916, long before the supreme court decisions referred to supra, which we think clearly disapprove, or limit, the Burns holding.

She also cites Hughes v. Prudential Ins. Co., Mo.App., 179 S.W.2d 630. This case was considering the meaning of the phrase "permanently disabled", as used in an insurance policy. All that was held is that such a phrase should not be narrowly construed, and that if it appears that the condition complained of is reasonably certain to continue permanently or indefinitely, then such an instruction is proper.

Plaintiff also argues that the court should give special consideration to the fact that this case was not tried until about six and one-half years after the accident, and that the condition of her hand at the time of trial would be sufficient to submit the issue of permanent injury. The elapsed time must be given consideration in determining the issue of permanency, but plaintiff's testimony of the condition of her hand at the time of the trial is too general and indefinite for us to say that the trial court abused its discretion. The plaintiff cites three cases from other jurisdictions: Trani v. Anchor Hocking Glass Corp., 142 Conn. 541, 116 A.2d 167; McClure v. Miller, 229 Ind. 422, 98 N.E.2d 498; and Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328. These cases do hold that where a condition continues to exist long after the time of injury, there need not be expert testimony to authorize the submission of permanency. With that we agree. But in these cases, the facts were much stronger than in the instant case, and the trial court had permitted the judgment to stand. Such cases may be persuasive, but are not controlling.

In her brief, plaintiff requests that if we should affirm the order of the trial court, we remand the case for trial of the issue of damages only, because the jury's verdict has found the issue of liability against the defendant. We are informed that this same request was made of the trial court at the time the motion for new trial was acted upon, and was refused. This question gives us concern. Defendant's motion for new trial sets forth 16 alleged errors. Some of these relate to the improper admission of evidence, and others to erroneous instructions. These questions are not briefed and are not before us for consideration.

There are cases where the trial court had overruled defendant's motion for new trial and all alleged errors were considered by the appellate court, and it was found that the issue of liability had been fairly tried and submitted, and the only error related to the issue of damages. Under such circumstances, the cause has been remanded for trial on the issue of damages only. However, in this case the trial court sustained the motion on one ground and that is the only point submitted on appeal. We are not in a position to say with any degree of certainty that the issue of liability has been fairly tried and submitted, or that the court did not err in the admission of evidence. Since the trial court refused to order a trial on the issue of damages only, we are unwilling to say that this was prejudicial error.

We think the court's order sustaining the motion for new trial should be affirmed and the cause remanded. Arnold v. Haskins, 347 Mo. 320, 147 S.W.2d 469, 473. It is so ordered.

All concur.